In re KEYBOARD CENTER, INC., Debtor.

Bankruptcy No. B–79–490.

United States Bankruptcy Court, D. Connecticut.

March 13, 1981.

Levin & Charmoy, Bridgeport, Conn., for debtor.

Goldstein & Peck, P. C., Bridgeport, Conn., for landlord.

## DECISION ON OBJECTION TO ALLOWANCE OF A PRIORITY CLAIM

HOWARD SCHWARTZBERG, Bankruptcy Judge.*

This debtor-in-possession has objected to its landlord's priority claim for tax adjustments and common area maintenance charges. Both obligations were expressly imposed under the written lease between the parties that had been entered into before the filing of the petition under Chapter XI of the former Bankruptcy Act. The landlord bases its claim on the fact that the debtor-in-possession retained possession of the premises in question after the filing of the petition.

## FINDINGS OF FACT

1. The debtor, Keyboard Center, Inc., of Shelton, Connecticut, filed with this Court its petition for an arrangement under Chapter XI of the former Bankruptcy Act on July 12, 1979 and was authorized to manage its property as a debtor-in-possession in ac-

cordance with § 343 of the former Bankruptcy Act.

2. The plaintiff-landlord, Westland Properties, N.V., of Trumbull, Connecticut, and the debtor had previously entered into a written lease, dated September 1, 1978, pursuant to which the debtor occupied premises owned by the plaintiff in Trumbull Shopping Park, Trumbull, Connecticut.

3. On or about May 22, 1979, the landlord served the debtor with a notice to quit possession because of an alleged default by the debtor under the terms of the lease. The debtor was served thereafter with two additional notices to quit possession, dated June 22, 1979 and July 6, 1979.

4. The debtor continued in possession of the premises in question even after the filing of the Chapter XI petition on July 12, 1979 and was therefore entitled to the protection of the automatic stay imposed under Bankruptcy Rule 11–44.

5. On October 9, 1979, the landlord obtained from this Court relief from the automatic stay and was permitted to commence and prosecute a summary process action for possession of the premises. However, the execution of any judgment was conditioned on obtaining a further order from this Court.

6. On November 13, 1979, the landlord obtained a judgment of possession of the premises in the Superior Court of the State of Connecticut. The landlord then petitioned this Court for leave to proceed to execute on the judgment, which was then granted by this Court on June 9, 1980, subject to a thirty day period during which the parties could attempt to negotiate a new lease for continued occupancy of the premises.

7. The parties thereafter entered into a new lease for the premises in September, 1980.

8. Prior to confirmation of the debtor's Chapter XI plan, the landlord filed an amended proof of claim asserting the following items as priority claims:

---

* U.S.B.J., Southern District of New York, sitting by designation of the Chief Judge, United States Court of Appeals, Second Circuit.

(a) Common Area and maintenance charge for the year ending June, 1979, billed in March, 1980, in the amount of $1,197.45.

(b) Tax adjustments charged for the years 1977 and 1978 in the amount of $1,304.29, billed on September 25, 1979.

9. The lease dated September 1, 1978, which covered the period in question, provided that the debtor would be responsible for certain common area maintenance charges [1] and tax adjustments.[2]

## DISCUSSION

The debtor-in-possession argues that the common area maintenance charges and taxes accrued prior to filing of the Chapter XI petition and cannot be treated as administration expense claims, notwithstanding that they were obligations assumed by the prepetition debtor under its written lease with the landlord. The debtor does not regard the lease as determinative of its obligations because it notes that under Connecticut law, the service of a notice to quit, after a breach of the lease agreement, is an unequivocal act, terminating the lease. *Tseka v. Scher*, 135 Conn. 400, 404, 65 A.2d 169 (1946); and that if the tenant remains in possession thereafter, the landlord can only collect from a tenant at sufferance damages measured by the fair rental value for the premises. *Lonergan v. Connecticut Food Store*, 168 Conn. 122, 130, 357 A.2d 910 (1975).

The Bankruptcy Courts arrive at the same conclusion, but via a different avenue. It is settled law that until a lease is either assumed or rejected, the sole obligation of a debtor-in-possession is for actual use and occupancy of the property, based upon a reasonable value for such use and occupation. *Philadelphia Co. v. Dipple*, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1940); *In re J. Bain, Inc.*, 554 F.2d 255 (5 Cir. 1977); *S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2d Cir. 1963); *In re CRS Architectural Metals Corp.*, 1 B.R. 729 (Bkrtcy.E.D.N.Y.1979); *In re Standard Furniture Corp.*, 3 B.R. 527 (Bkrtcy.S.D.Cal.1980). The allowable amount of this administrative expense is ordinarily determined by an allocation of the rent reserved in the lease on a pro rata basis. *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir. 1939), cert. den., 308 U.S. 590, 60 S.Ct. 120, 184 L.Ed. 494 (1939); *In re J. Bain Inc.; In re CRS Architectural Metals Corp.; In re Standard Furniture Co.*, supra.

1. "Tenant agrees to pay upon demand, in addition to the rental set forth in Article III of this lease, a proportionate share of the cost of operation, lighting, cleaning, snow removal, line painting, policing and maintenance, including such replacement of paving, curbs, walkways, landscaping and drainage and lighting facilities as may from time to time be necessary, of all of the common areas including the Mall, truck concourse and all other public or common facilities of the Shopping Park. Cost of operation and maintenance shall not include real estate taxes and assessments or depreciation of the original investment. The proportionate share to be paid by the Tenant shall be computed on the basis that the number of units demised herein bears to the total number of units occupied by all of the occupants, whether as tenants or owners, of the buildings in the Shopping Park, exclusive of any office and/or medical building. A unit is defined as one square foot of floor space. It is understood and agreed that Tenant shall be charged no less than eighty (80) Cents per unit per year, payable monthly in advance."

2. "... Landlord agrees to pay taxes assessed against the real estate. Such taxes shall be paid within thirty (30) days after the taxes shall become due and payable and shall be collectible as a part of rent.

Tenant further covenants and agrees with the landlord to pay as additional rent for the real estate hereby demised, promptly when due, the proportionate share of the real estate taxes, assessments and municipal or governmental charges, general and special, ordinary and extraordinary of every nature and kind whatsoever, which may be (a) levied, imposed or assessed on the real estate hereby demised, or on any improvements thereon at any time after the date of this lease, or (b) which the Landlord shall be required to pay by reason of or on account of its interest in the real estate hereby demised and the improvements on said real estate. Tenant further agrees to pay an estimated sum per month as established by Landlord, on the first day of each month in advance. Said sum to be adjusted as necessary by Landlord and adjusted at the end of each of Landlord's tax years."

The parties differ, however, as to whether or not the reasonable value of the debtor-in-possession's actual use and occupation should include an obligation imposed under the lease for common area maintenance and taxes which accrued prior to the filing of the Chapter XI petition. Certainly, absent any evidence to the contrary, the rental due under the lease between the parties (although the lease may have been terminated immediately before the filing of the Chapter XI petition by the landlord's service of the notices to quit) reflected the fair rental value of the premises. Additionally, the fair value of the benefits conferred upon the debtor-in-possession should include the common area charges and taxes that accrued during the actual use and occupation, since these items were included in the rental charges to be paid by the debtor. *In re J. Bain Inc.; In re CBS Architectural Metals Corp.*, supra.

It does not matter when the common area maintenance charges and the taxes were billed by the landlord to the tenant; it is the period during which they accrued that is crucial to this determination. Thus, it is evident that the common area maintenance charges accrued for the year ending June, 1979, in a period which immediately preceded the filing of the Chapter XI petition on July 12, 1979. Accordingly, the debtor-in-possession and the estate derived no benefit or unjust enrichment through its actual use and occupation of the premises after July 12, 1979 so as to be equitably bound to pay for a burden assumed by the prepetition debtor. This burden should not be shifted to the debtor-in-possession. See *In re CRS Architectural Metals Corp.*

Similarly, the period covered by the tax bill attributable to the 1977 list in the sum of $373.16 accrued during a prepetition period and cannot be included in measuring the actual use and occupation by the debtor-in-possession. As to the second tax bill, covering the period from July 1, 1979 through June 30, 1980, almost all of this period is postpetition. The last three quarterly payments came due on October 1, 1979, January 2, 1980 and April 1, 1980.

The proportionate part of the tax charges for these three postpetition periods amounts to $698.35. This amount should be included in the fair rental value of the premises during the debtor-in-possession's actual use and occupancy. See *In re J. Bain, Inc.*, supra. Hence, the landlord's claim for taxes, to the extent of $698.35, constitutes part of the reasonable use and occupancy of the premises and is an administration expense under § 64(a)(1) of the Bankruptcy Act.

## CONCLUSIONS OF LAW

1. The claim of Westland Properties, N.V. for taxes covering the period from July 1, 1979 through June 30, 1980 is allowed as an administration expense under § 64(a)(1) of the former Bankruptcy Act to the extent of $698.35, being part of the reasonable value of the debtor-in-possession's use and occupation.

2. The debtor-in-possession's objection to the balance of the claims of Westland Properties, N.V. for common maintenance and tax adjustments is sustained, with the result that such claims shall be paid under the plan as general unsecured claims.

SUBMIT order on notice.