**In re the KRYSTAL COMPANY, Debtor.**

**Bankruptcy No. 95–15306.**

United States Bankruptcy Court, E.D. Tennessee.

March 12, 1996.

David G. Epstein, Sarah Robinson Borders, King & Spaulding, Atlanta, GA, Shelley D. Rucker, Miller & Martin, Chattanooga, TN, for Debtor.

William R. Sonnenburg, Ass't. U.S. Trustee, Office of U.S. Trustee, Chattanooga, TN.

Thomas E. Ray, Chattanooga, TN, for Easte Brinkley.

Harold L. North Jr., Chattanooga, TN, for FLSA Claimants.

Richard B. Gossett, Baker, Donelson, Bearman & Caldwell, Chattanooga, TN, Neal Batson, Alston & Bird, Atlanta, GA, for Comm./Unsec/Creditors.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case is before the court upon the Amended and Restated Motion for Authority to Pay Certain Taxes filed by the Krystal Company, the debtor in this Chapter 11 case. The motion seeks permission of the court to pay in due course the real estate taxes that Krystal is obligated to pay under the terms of the numerous and various nonresidential real property leases to which it is a party. The issue to be decided is whether the taxes constitute "obligations" within the meaning of § 365(d)(3) of the Bankruptcy Code that are required to be paid by the debtor on a current basis.

█ The Bankruptcy Code was amended in 1984 with the addition of § 365(d)(3), which in pertinent part provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). Krystal contends that the real estate taxes it is required to pay under the terms of its leases are "obligations" within the meaning of this section and that these obligations must be paid in full at the time they come due under the leases. The Official Committee of Creditors Holding Unsecured Claims ("Committee") disagrees with Krystal's reading of § 365(d)(3) and argues instead that tax obligations owed by the debtor to a landlord which come due under the terms of a lease during the postpetition—prerejection period ("prerejection period") are payable, not in full, but only to the extent that the obligation can be apportioned or allocated to the prerejection period. Thus, according to the Committee, tax obligations that could be said to have accrued during the prepetition period must not be paid under § 365(d)(3) in order to prevent windfalls to landlords at the expense of other unsecured creditors.

Most courts agree that § 365(d)(3) is intended to require debtors to pay their rent obligations in full and without proration as they come due during the prerejection period. *Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir.1994); Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield*, 68 Am.Bankr.L.J. 437, 460–62 (1994) (hereinafter Fruchter); *contra In re Mr. Gatti's, Inc.*, 164 B.R. 929, 937–42 (Bankr.W.D.Tex.1994) (disagreeing with the

majority view but collecting the cases for and against it). As for tax obligations of the debtor coming due in the prerejection period, the courts are split. The majority hold that § 365(d)(3) requires a debtor to pay (as an administrative expense) only such taxes as can be allocated to the prerejection period, and these courts thus prorate tax bills that arrive during the prerejection period to the prepetition (unsecured claim) and prerejection (administrative claim) periods. They require payment under § 365(d)(3) only of those taxes that can be said to have "accrued" during the prerejection period. *Schneider & Reiff v. William Schneider, Inc. (In re William Schneider, Inc.)*, 175 B.R. 769 (S.D.Fla.1994); *Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571 (S.D.N.Y.1993); *In re All For A Dollar, Inc.*, 174 B.R. 358 (Bankr. D.Mass.1994); *In re Almac's, Inc.*, 167 B.R. 4 (Bankr.D.R.I.1994). The minority position is most fully stated in *In re R.H. Macy & Co.*, 152 B.R. 869 (Bankr.S.D.N.Y.1993), which held that a Chapter 11 debtor was required to pay all the taxes represented in a tax bill that came due under the debtor's lease during the prerejection period without regard to when the taxes accrued. This so-called "billing date" theory is also adopted in *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965, 976 n. 23 (D.Kan.1993).

The most natural reading of § 365(d)(3) leads to the conclusion that Congress meant to require payment of all the debtor's obligations falling due under its lease until such time as the debtor rejects the lease in question. Essentially the statute requires the debtor to "timely perform" its "obligations ... under any unexpired lease...." until the lease has been assumed or rejected. That language clearly includes tax reimbursement payments to the landlord if and when called for by the lease. The problem is caused by the additional language of the statute, "arising from and after the order for relief," which modifies the word "obligations." Courts adopting the accrual theory believe this language allows them to adhere to the pre–1984 (pre-section 365(d)(3)) practice of prorating taxes between the prepetition and

prerejection periods because they mistakenly assume that the "arising from" language of the statute means that the obligation must somehow arise from the prerejection period—that is, be an administrative expense—before the obligation is payable.

This court disagrees because other language within the statute, "notwithstanding section 503(b)(1) of this title," directly precludes viewing such obligations as administrative expenses. The "notwithstanding" phrase means that the obligations in question are to be paid "in spite of" the operation of § 503(b)(1), which would otherwise limit postpetition payments to those necessary for "preserving the estate." *See In re Washington Mfg. Co.*, Nos. 388–01467, –01468, –01469, 1993 WL 156083 (Bankr.M.D.Tenn. May 11, 1993). Thus, these prerejection obligations are not to be viewed as administrative expenses, but as obligations to be "timely perform[ed]" under the lease. Moreover, since the payment of these obligations is not designed to preserve the *estate* (but rather the vulnerable *landlord*), the concepts of accrual, proration and allocation—so necessary for distinguishing between prepetition debts and administrative expenses in the context of § 503(b)(1)—are irrelevant and inapplicable under § 365(d)(3).

That § 365(d)(3) was designed to protect the landlord rather than the estate by disarming § 503(b)(1)'s practices and procedures may be readily seen in the legislative history of § 365(d)(3). Senator Orin Hatch, a conferee on the 1984 amendments, made the following remarks:

This subtitle contains three major substantive provisions which are intended to remedy serious problems caused *shopping centers and their solvent tenants* by the *administration* of the bankruptcy code.

. . . .

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according

to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor. This bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. *This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time* pending the trustee's assumption or rejection of the lease.

H.R.Rep. No. 882, 95th Cong., 2d Sess.1984, *reprinted in* 1984 U.S.C.C.A.N. 576 (emphasis added).

Senator Hatch's remarks avoid the confusing "arising from and after" language of § 365(d)(3) and significantly make no mention of the concepts of accrual or proration of charges. There is no mention of "actual or necessary" expenses as might be expected if § 503(b)(1) were still operative. There is only the categorical "timely performance requirement" as an antidote to the problems "caused ... by the administration of the bankruptcy code." When read in conjunction with the statute as it must be, this "problem" language can only refer to § 503(b)(1), for that is the subsection specifically overridden by the amendment. Section 503(b)(1)'s essential concepts, accrual and proration, cannot be shown to have survived in § 365(d)(3), where they are unnecessary on a plain reading of the statute, and it makes no sense to force them.

■ The legislative solution to a problem need not necessarily be a perfect solution, and there are doubtless cases that can be imagined in which the court's reading of the statute in question might produce dubious results, as where rent or some other lease obligation is payable in one yearly installment, or perhaps every several years. Actually, these situations are not nearly as seri-ous as they might seem at first blush, and policy arguments based on supposed anomalous results, such as those made in *In re Child World, Inc.*, 161 B.R. at 576, overlook remedies already available in the Code. *See* Fruchter at 468–71.

■ From a reading of the statute and its legislative history, it appears that Congress specifically intended to except a tenant's lease obligations to his landlord from the workings of the Code's administrative expense provisions because Congress believed nonresidential landlords and their other solvent tenants were particularly vulnerable creditors under the old procedures. Rather than forcing the landlord to take the initiative, apply for, and wait for an administrative expense allowance, as it was required to do before 1984, Congress intended § 365(d)(3) to shift the burden of indecision to the debtor: the debtor must now continue to perform all the obligations of its lease or make up its mind to reject it before some onerous payment comes due during the prerejection period. That is a sensible adjustment of this particular debtor-creditor relationship.

■ For the foregoing reasons, the court concludes that § 365(d)(3) requires a debtor under an unexpired, nonresidential real estate lease to perform the obligations of that lease, including the reimbursement of real estate taxes paid by the landlord, at the time they come due according to the terms of the lease.

The parties are directed to submit a proposed order in accordance this memorandum.