*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0056P (6th Cir.)
File Name: 00a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In Re: KOENIG SPORTING GOODS, INC.,

                    *Debtor.*

_____

No. 99-3347

KOENIG SPORTING GOODS, INC.,

                    *Appellant,*

       *v.*

MORSE ROAD COMPANY,

                    *Appellee.*

On Appeal from the Bankruptcy Appellate
Panel of the Sixth Circuit.
No. 97-15635—David F. Snow, Bankruptcy Judge.

Argued: January 25, 2000

Decided and Filed: February 15, 2000

Before: GUY, RYAN, and BOGGS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Jeffrey C. Toole, BUCKLEY, KING & BLUSO CO., Cleveland, Ohio, for Appellant. Ellen Maglicic Kramer, KOHRMAN, JACKSON & KRANTZ, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey C. Toole,  Harry W. Greenfield, BUCKLEY, KING & BLUSO CO., Cleveland, Ohio, for Appellant.  Ellen Maglicic Kramer, Jonathon M. Yarger, KOHRMAN, JACKSON & KRANTZ, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge.  Koenig Sporting Goods, Inc. (debtor) appeals from the judgment of the Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's decision to grant Morse Road Company's request for a full month's rent.  On appeal, the debtor claims that the bankruptcy court and the BAP erred in ruling that 11 U.S.C. § 365(d)(3) requires a debtor in bankruptcy to pay rent for an entire month when the debtor has rejected the lease of nonresidential real property and vacated the premises on the second day of the month.  After a review of the record and arguments presented on appeal, we affirm.

**I.**

The facts are not disputed.  In November 1993, Morse, as landlord, and the debtor, as tenant, entered into a ten-year lease under which the debtor was obligated to pay Morse $8,500 on the first of each month for that month's rent.[1]  The debtor operated a sporting goods store on the property.  On

———————————

[1]The $8,500 monthly rent payment included $500 in charges for common area maintenance.

period.  That is a sensible adjustment of this particular debtor-creditor relationship.")

The debtor's reliance on our decision in *Vause* is unavailing.[4]  There, we considered the meaning of the term "due" in 11 U.S.C. § 502(b)(6) to determine whether Congress intended to give lessors damages for unpaid rent "owing" under the lease or "payable" under the lease.  In *Vause*, the debtor farmers were obligated to pay the lessor $36,000 on December 1 of each year for the *prior* year's occupancy.[5]  On November 27, 1985, four days before the rent for 1985 became due, the debtors filed for bankruptcy and sought permission to reject the lease.  The farmers argued that because the previous year's rent was not due until December 1, they were not obligated to pay any portion of the rent.  We found the term "due" to be ambiguous in that context, and concluded that such a result, under the unique facts of that case, would be inequitable and ruled in favor of the lessor.

No such facts or inequities are present in this case.  While the debtor characterizes Morse's receipt of a full month's rent for December 1997 as a "windfall," we disagree.  Rather, Morse would receive that to which it is entitled under § 365(d)(3) and the debtor is obligated to pay under the lease.

**AFFIRMED.**

———————————

[4]Morse relies on *Vause* as well.  Both sides argue that the following sentence from *Vause* strengthens their argument: "Section 502(b)(6) is not difficult to apply when a lease does not make rent payable in arrears." *Vause*, 886 F.2d at 798-99.  Our dicta as to the application of § 502(b)(6) in a different context than was present in *Vause* is not controlling. Further, the parties' conflicting interpretations of the case undermine their respective reliance upon it.

[5]"[A] farm lease is unique in that the lessee is permitted to occupy and make use of the land but not pay for such use until the *end* of occupancy." *Vause*, 886 F.2d at 796.  In contrast, the debtor here was permitted to occupy Morse's property if it paid *in advance* for that right.

August 18, 1997, the debtor voluntarily filed for bankruptcy under Chapter 11 and later obtained leave from the bankruptcy court to conduct going-out-of-business (GOB) sales at its remaining retail stores. The debtor subsequently moved for an extension of time within which it could assume, assume and assign, or reject unexpired leases of nonresidential real property. The debtor sought the right to reject the leases, upon seven-days' notice, covering the properties where the GOB sales were to be held. Morse received the debtor's motion, but did not object. The bankruptcy court granted the motion on November 6, 1997.

On November 25, 1997, the debtor notified Morse that it was rejecting the lease effective December 2, 1997, which was the date that the debtor vacated the property. On January 29, 1998, Morse filed a request with the bankruptcy court seeking payment of the rent for the full month of December. The debtor objected to paying rent for the entire month and argued that Morse was entitled to receive only $516.13, representing the pro rata value of rent for December 1 and 2. The bankruptcy court disagreed and granted Morse's request. *See In re Koenig Sporting Goods, Inc.*, 221 B.R. 737 (Bankr. N.D. Ohio 1998). Following the debtor's appeal, this circuit's BAP affirmed, with one judge dissenting. *See Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 229 B.R. 388 (B.A.P. 6th Cir. 1999). The debtor's appeal to this court followed.

## II.

The debtor claims that the bankruptcy court and the BAP erred in ruling that Morse was entitled to a full month's rent under 11 U.S.C. § 365(d)(3). Based upon the statute's language, legislative history, common sense, and equity, the debtor argues that it was only required to pay for the two days that it actually occupied the premises at the beginning of December.

"Whether an appeal comes to our court by way of a district court or the BAP, our review is of the bankruptcy court's decision." *Corzin v. Fordu (In re Fordu)*, ___ F.3d ___, No.

left in doubt concerning their status vis-a-vis the estate.'" *Tully Constr. Co. v. Cannonsburg Envtl. Assocs., (In re Cannonsburg Envtl. Assocs.)*, 72 F.3d 1260, 1266 (6th Cir. 1996) (quoting H.R. REP. No. 95-595, at 348 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304). The legislative history also suggests that the purpose was "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease." *Omni Partners, L.P. v. Pudgie's Dev. of NY, Inc. (In re Pudgie's Dev. of NY, Inc.)*, 239 B.R. 688, 692 (S.D.N.Y. 1999) (citing 130 CONG. REC. S8894-95 (daily ed. June 29, 1994) (statement of Sen. Hatch)).

Under the terms of the lease the debtor was obligated to pay Morse $8,500 in advance on the first of each month for that month's rent. The specific obligation to pay rent for December 1997 arose on December 1, which was during the postpetition, prerejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.

The debtor argues that policy considerations, equity, and "common sense" compel adoption of the proration method in this context. We disagree. The debtor alone was in the position to control Morse's entitlement to payment of rent for December. If the debtor had rejected the lease effective November 30, 1997, rather than December 2, it would not have been obligated to pay rent for December under 11 U.S.C. § 365(d)(3). Instead, an election was made to reject the lease effective December 2, one day *after* the debtor's monthly rent obligation would arise. In this case, involving a month-to-month, payment-in-advance lease, where the debtor had complete control over the obligation, we believe that equity as well as the statute favors full payment to Morse. *See Krystal*, 194 B.R. at 164 (emphasizing that "Congress intended § 365(d)(3) to shift the burden of indecision to the debtor: the debtor must now continue to perform all the obligations of its lease or make up its mind to reject it before some onerous payment comes due during the prerejection

97-3936, 1999 WL 1222643, at *13 n.1 (6th Cir. Dec. 22, 1999).   We review *de novo* the legal conclusions of the bankruptcy court.  *See id.*  In granting Morse the right to a full month's rent, the bankruptcy court held that

> section 365(d)(3) was, at the least, intended to assure the landlord payment of ordinary monthly rent payments which become due during the postpetition prerejection period.  Since Congress was no doubt well aware that rent[] is usually paid monthly in advance, it is not really possible to reconcile section 365(d)(3) with according the Debtor the option not to pay its monthly rent when due, even though payment would impinge to some extent upon normal bankruptcy principles and priorities.

Statutory interpretation is a question of law also subject to *de novo* review.  *See Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 798 (6th Cir. 1989).

"The starting point in interpreting a statute is its language[.]"  *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409 (1993).  "Our interpretation of legislative acts is limited, for '[i]f the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'"  *Nixon v. Kent County*, 76 F.3d 1381, 1386 (6th Cir. 1996) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)).  When a statute is unambiguous, resort to legislative history and policy considerations is improper. *See Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir. 1991).  "Departure from the language of the legislature and resort to judicially created rules of statutory construction is appropriate only in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . or when the statutory language is ambiguous.'"  *Nixon*, 76 F.3d at 1386 (quoting *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir. 1994)).  When a statute is ambiguous, we look to its purpose and may consider the statute's policy implications in determining what Congress intended.  *See*

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 738-39 (6th Cir. 1999).

Section 365(d)(3) states in pertinent part:

> The trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[2]

The debtor argues that the language referring to the "obligations of the debtor . . . arising from and after the order for relief" is ambiguous and requires us to resort to judicially created rules of statutory construction.  Both parties have identified the split of authority within the district and bankruptcy courts as to the proper interpretation of this provision.  One line of cases generally supports the debtor's position that Morse is entitled to only a pro-rata share of December rent for those days the debtor actually occupied the property, *see*, *e.g.*, *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934 (S.D.N.Y. 1997) (proration approach), while the other line generally supports Morse's entitlement to a full month's rent, *see, e.g., In re Krystal Co.*, 194 B.R. 161 (Bankr. E.D. Tenn. 1996) (performance date approach).[3]  Neither the Sixth Circuit nor any other circuit has addressed this issue in the context presented here.

The purpose of § 365(d) is to "'prevent parties in contractual or lease relationships with the debtor from being

---

[2] A debtor's obligations under § 365(d)(3) should not be analyzed by reference to the principles governing administrative claims under § 503(b)(1).  *See Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.)*, 27 F.3d 401, 405 (9th Cir. 1994).

[3] Both *McCrory* and *Krystal*, which involve a debtor's obligation to pay taxes pursuant to a lease, are cited simply to show the competing views on the more general issue of proration versus full payment in the § 365(d)(3) context.