**In re PHAR–MOR, INC., et al., Debtors.**

**No. 01–44007.**

United States Bankruptcy Court, N.D. Ohio.

March 11, 2003.

Michael A. Gallo, Esq., Timothy M. Reardon, Esq., Nadler Nadler & Burdman Co., L.P.A., Youngstown, OH, for debtor.

Mark A. Beatrice, Esq., Manchester, Bennett, Powers & Ullman, Youngstown, OH, Thomas M. Pinney, White and Williams LLP, Philadelphia, PA, for Landlord.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Chief Judge.

This cause is before the Court on the motion of GP–Fairgrounds Square, L.P. ("Landlord") for payment of an administrative claim for nonresidential real property taxes for years 2001 and 2002. Phar–

Mor, Inc. ("Debtor") filed a response arguing that Landlord was not entitled to the relief it sought. A hearing was held on this matter on November 20, 2002. Mark A. Beatrice, Esq. and Thomas M. Pinney, Esq. appeared on behalf of Landlord. Michael A. Gallo, Esq. and Timothy M. Reardon, Esq. appeared on behalf of Debtor. This constitutes the Court's findings of fact and conclusions of law pursuant to the requirements of FED. R. BANKR. P. 7052.

## DISCUSSION

### A. Facts

There is no dispute as to the material facts in this case. On September 24, 2001, Debtor filed for relief under Chapter 11 of Title 11, United States Code. The parties filed a stipulation of facts on November 19, 2002. Landlord is the owner of nonresidential real property located in Pennsylvania. Debtor leases and operates a store ("Store 114") pursuant to a lease dated August 17, 1987 on that property. This Court approved rejection of the lease on August 27, 2002. Debtor surrendered possession of Store 114 on August 31, 2002. A true and correct copy of the lease was attached to the stipulation as Exhibit A.

The lease at section 12(b) states that

Landlord shall pay the Taxes for the Shopping Center and Tenant shall pay to Landlord as its proportionate share of the Taxes (the "Tax Charge") an amount [determined by a formula] .... The Tax Charge shall be paid to Landlord at the same time as Taxes are due by Landlord to the applicable taxing authority.

Stipulation, Ex. A at 22. The lease at section 12(f) states that "[a]ny amount payable by Tenant to Landlord under this paragraph shall be paid by Tenant to Landlord within thirty (30) days of the date due or upon receipt by Tenant from

Landlord of a bill setting forth such amount whichever is later." Stipulation, Ex. A at 23. The lease further states at section 12(c) that

[a]ny fiscal tax year or years commencing during any Lease Year shall be deemed to correspond to such Lease Year, except that with respect to the first and last Lease Years of the Term, the Taxes for the then current tax year or years and the Tax Charge payable by Tenant shall be prorated as of the Commencement Date and the end of the last Lease Year.

Stipulation, Ex. A at 22.

Landlord was assessed real estate taxes for the property in the form of municipal taxes and school taxes. In contrast to Ohio law, real estate taxes in Pennsylvania are not paid in arrears. The municipal taxes are assessed and due in the same calendar year (January 1 to December 31). The school taxes are assessed and due in the same fiscal year (July 1 to June 30).

The parties further stipulate to the following facts for the municipal taxes for January 1, 2001 to December 31, 2001 and for the school taxes for July 1, 2001 to June 30, 2002, (collectively, "the 2001 taxes"). On or about March 16, 2001, Landlord paid the municipal taxes for the 2001 calendar year. On or about July 17, 2001, Landlord paid the school taxes for the 2001 fiscal year. On or about July 1, 2002, Landlord billed Debtor for its proportionate share of the total 2001 taxes in the amount of Sixty–Seven Thousand Seven Hundred Seventy and 08/100 Dollars ($67,-770.08). The 2001 municipal taxes totaled Seventeen Thousand Five and 40/100 Dollars ($17,005.40) and the 2001 school taxes totaled Fifty Thousand Seven Hundred Sixty–Three and 17/100 Dollars ($50,-

763.17).[1]  The parties agree that if the 2001 taxes are prorated based upon the period of Debtor's occupancy of Store 114 from September 24, 2001 (the petition date) to August 31, 2002 (date of surrender), then the 2001 municipal taxes would be Four Thousand Six Hundred Twelve and 42/100 Dollars ($4,612.42) and the 2001 school taxes would be Thirty–Eight Thousand Nine Hundred Forty–One and 61/100 Dollars ($38,941.61).[2]

The parties further stipulate to the following facts for the municipal taxes for January 1, 2002 to December 31, 2002 and for the school taxes for July 1, 2002 to June 30, 2003, (collectively, "the 2002 taxes").  On or about March 17, 2002, Landlord paid the municipal taxes for the 2002 calendar year.  On or about July 25, 2002, Landlord paid the school taxes for the 2002 fiscal year.  On or about August 15, 2002, Landlord billed Debtor for its proportionate share of the total 2002 taxes in the amount of Seventy–Two Thousand Six Hundred Five and 57/100 Dollars ($72,605.57).  The 2002 municipal taxes totaled Nineteen Thousand Six Hundred Three and 50/100 Dollars ($19,603.50) and the 2002 school taxes totaled Fifty–Two Thousand Eight Hundred Three and 24/100 Dollars ($52,803.24).[3]  The parties agree that if the 2002 taxes are prorated based upon the period of Debtor's occupancy of Store 114, then the 2002 municipal taxes would be Thirteen Thousand Fifty–One and 10/100 Dollars ($13,051.10) and the 2002 school taxes would be Eight Thousand Nine Hundred Sixty–Nine and 32/100 Dollars ($8,969.32).[4]

Landlord also requested payment for miscellaneous charges in its original motion for replacement of a cherry tree, a pre-petition delivery of outdoor furniture, trash receptacles and a roof inspection. These charges are disallowed because there was no supporting evidence submitted to the Court.

To summarize:

1.  When the subtotals of the 2001 taxes are added together ($17,005.40 + $50,763.17), they do not equal the total billed to Debtor, $67,770.08.  The proper total is $67,768.57. The Court will use the total provided by the parties in the stipulation because the parties stipulated that $67,770.08 is the total billed to Debtor.  This is, however, of no import in later calculations.

2.  The parties use the subtotals of the 2001 taxes to calculate the prorated totals.  The prorated amount for the 2001 municipal taxes is based on 99 days of occupancy (from the petition date of September 24, 2001 to the end of the calendar year, December 31, 2001). The prorated amount of $4,612.42 is the total of $17,005.40 multiplied by the fraction of 99/365 days.

    The prorated amount for the 2001 school taxes is based on 280 days of occupancy (from the petition date of September 24, 2001 to the end of the fiscal year, June 30, 2002).  The prorated amount of $38,941.61 is the total of $50,763.17 multiplied by the fraction of 280/365 days.

3.  When the subtotals of the 2002 taxes are added together ($19,603.50 + $52,803.24), they do not equal the total billed to Debtor, $72,605.57.  The proper total is $72,406.74. The Court will use the total provided by the parties in the stipulation because the parties stipulated that $72,605.57 is the total billed to Debtor.  This is, however, of no import in later calculations

4.  The parties use the subtotals of the 2002 taxes to calculate the prorated totals.  The prorated amount for the 2002 municipal taxes is based on 243 days of occupancy (from the beginning of the calendar year, January 1, 2002, to the date of surrender, August 31, 2002).  The prorated amount of $13,051.10 is the total of $19,603.50 multiplied by the fraction of 243/365 days.

    The prorated amount for the 2002 school taxes is based on 62 days of occupancy (from the beginning of the fiscal year, July 1, 2002 to the date of surrender, August 31, 2002). The prorated amount of $8,969.32 is the total of $52,803.24 multiplied by the fraction of 62/365 days.

| January 1, 2001 | 2001 municipal tax year begins |
| March 16, 2001 | Landlord pays 2001 municipal taxes |
| July 1, 2001 | 2001 school fiscal tax year begins |
| July 17, 2001 | Landlord pays 2001 school taxes |
| September 24, 2001 | Petition date |
| December 31, 2001 | 2001 municipal tax year ends |
| January 1, 2002 | 2002 municipal tax year begins |
| March 17, 2002 | Landlord pays 2002 municipal taxes |
| June 30, 2002 | 2001 school fiscal tax year ends |
| July 1, 2002 | 2002 school fiscal tax year begins |
| July 1, 2002 | Landlord billed Debtor for 2001 taxes |
| July 25, 2002 | Landlord pays 2002 school taxes |
| August 15, 2002 | Landlord billed Debtor for 2002 taxes |
| August 31, 2002 | Rejection date, Debtor surrendered possession of Store 114 |
| December 31, 2002 | 2002 municipal tax year ends |
| June 30, 2003 | 2002 school fiscal tax year ends |

### B. Issue

Landlord seeks payment of the total 2001 and 2002 real estate taxes assessed against Store 114 as an administrative expense claim pursuant to 11 U.S.C. § 365(d)(3). Debtor argues Landlord is not entitled to an administrative expense claim pursuant to applicable law. The issue is whether, under § 365(d)(3), when a debtor-tenant is obligated under a lease to pay real estate taxes, the debtor must pay a full year's taxes or a prorated amount, when the debtor receives an annual tax bill in the post-petition, pre-rejection period and the payment would cover taxes for substantial pre-petition and post-rejection periods.

### ANALYSIS

#### A. Applicable Law

Section 365(d)(3) of the Bankruptcy Code governs the obligations of a debtor-tenant to its landlord between the time a bankruptcy petition is filed and the time a debtor-tenant assumes or rejects the lease: the post-petition, pre-rejection period in this case. Section 365(d)(3), added as an amendment to the Bankruptcy Code in 1984, provides in relevant part: "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."

Before the enactment of § 365(d)(3), the payment of post-petition lease obligations prior to assumption or rejection of an unexpired lease was governed by 11 U.S.C. § 503(b)(1). Section 503(b)(1) states that "there shall be allowed administrative expenses ... including—the actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. § 503(b)(1). Using § 503(b)(1), courts generally prorated both rent and tax obligations over the post-petition, pre-rejection period. "Pursuant to this subsection, courts ordinarily allowed as an administrative expense the full amount of the rent at the contract rate, so long as it was not clearly unreasonable, but prorated that rent over the post-petition, prerejection period." *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 936 (S.D.N.Y.1997) (citing *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir. 1939); *see also In re Dunwoody Vill. Sporting Goods, Inc.*, 11 B.R. 493, 494–95 (Bankr.N.D.Ga.1981); *In re Keyboard Ctr., Inc.*, 9 B.R. 472, 474 (Bankr.D.Conn.1981); *In re Standard Furniture Co.*, 3 B.R. 527, 529–30 (Bankr.S.D.Cal.1980)). When the lease required the debtor-tenant to reimburse the landlord for real estate taxes, courts typically only allowed a prorated payment of real estate taxes as an administrative expense, over the post-petition, pre-rejection period. *See e.g., Field v. Herrell (In re J. Bain, Inc.)*, 554 F.2d 255, 256–57 (5th Cir.1977); *In re Lackow Bros., Inc.*, 18 B.R. 770, 772 (Bankr.S.D.Fla. 1982); *In re Keyboard Center, Inc.*, 9 B.R. at 475; *Schefer v. CRS Architectural Metals Corp. (In re CRS Architectural Metals Corp.)*, 1 B.R. 729, 732 (Bankr.E.D.N.Y. 1979).

■ Section 365(d)(3) now requires debtor-tenants to provide landlords of non-residential real property full and timely payment for services due under an unexpired lease during the post-petition, pre-rejection period. *See* 11 U.S.C. § 365(d)(3). The purpose of § 365(d) is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." *Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1266 (6th Cir.1996) (citations and quotations omitted). Section 365(d)(3) was enacted because § 503(b)(1) left landlords in the position of being forced to keep a debtor-tenant while other creditors have the option to continue doing business with the debtor or to cease doing business with the debtor. In response to this situation, Congress passed § 365(d)(3) "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between [the date] a tenant's bankruptcy petition [is filed] and assumption or rejection of a lease." *Omni Partners, L.P. v. Pudgie's Dev. of NY, Inc. (In re Pudgie's Dev. of NY, Inc.)*, 239 B.R. 688, 692 (S.D.N.Y.1999) (quotations omitted).

Interpreting the legislative history in this way, the Sixth Circuit Court of Appeals determined that when a lease is a month-to-month, payment-in-advance lease, and the lease payment comes due during the post-petition, pre-rejection time period, a lessor is entitled to the full month's rent, regardless of the amount of time that has passed since the date the rent became due and the date the bankruptcy petition was filed. *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 989 (6th Cir.2000). The Court stated, "[t]he specific obligation to pay rent for

December 1997 arose on December 1, which was during the postpetition, prerejection period. *Under these circumstances*, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent." *Id.* (emphasis added). *Koenig* found § 365(d)(3) unambiguous in the context of the facts presented in that case.

Courts, however, are split on the issue of whether, under § 365(d)(3), when a debtor-tenant is obligated under a lease to pay real estate taxes, the debtor must pay a full year's taxes or a prorated amount, when the debtor receives an annual tax bill in the post-petition, pre-rejection period and the payment would cover taxes for substantial pre-petition and post-rejection periods.

### B. Majority Position

The majority of courts that have considered this general issue have followed the pre–1984 practice of prorating both a debtor's real estate tax obligations and periodic rent payments due pursuant to a lease, regardless of the billing date.[5] *See In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1127 (7th Cir.1998). *See also, Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 801 (6th Cir. 1989); *In re McCrory Corp.*, 210 B.R. at 939; *Child World, Inc. v. Campbell/Mass. Trust (In re Child World, Inc.)*, 161 B.R. 571, 576–77 (S.D.N.Y.1993); *In re Travel 2000, Inc.*, 264 B.R. 444, 450–51 (Bankr. W.D.Mich.2001); *In re Oscar Hornsby, Inc.*, 2001 Bankr.LEXIS 1062, *7 (Bankr. E.D.Ky.2001); *In re All for A Dollar, Inc.*, 174 B.R. 358, 361–62 (Bankr.D.Mass.1994); *In re Almac's, Inc.*, 167 B.R. 4, 7–8 (Bankr.D.R.I.1994); *In re Ames Dep't Stores, Inc.*, 150 B.R. 107, 108–9 (Bankr. S.D.N.Y.1993); *In re RB Furniture, Inc.*, 141 B.R. 706, 712 (Bankr.C.D.Cal.1992);

---

**5.** This is known as the "Accrual Approach."

*In re Revco D.S., Inc.,* 111 B.R. 626, 628–29 (Bankr.N.D.Ohio 1989); *In re Warehouse Club, Inc.,* 184 B.R. 316, 317–18 (Bankr.N.D.Ill.1995); *Daugherty v. Kenerco Leasing, Inc. (In re Swanton Corp.),* 58 B.R. 474, 475 (Bankr.S.D.N.Y.1986). These courts require payment under § 365(d)(3) only of those taxes that accrued during the pre-rejection period, regardless of the billing date. *See In re Child World, Inc.,* 161 B.R. at 576–77; *In re All for A Dollar, Inc.,* 174 B.R. at 361–62.

The majority of courts to decide this general issue finds § 365(d)(3) ambiguous as to when a debtor's "obligation" to reimburse a landlord for real estate taxes arises under a lease. The "obligation" may arise as it is accrued, or it may arise when the landlord submits the bill to the debtor-tenant.

The ambiguity becomes evident when § 365(d)(3) is read in conjunction with the sections of the Bankruptcy Code that deal with "claims" and their treatment. Claim is defined as "right to payment . . . ." 11 U.S.C. § 101(5). A claim is determined as of the petition date. *See* 11 U.S.C. § 502(b). Obligation is not defined in the Bankruptcy Code. As one court explained the ambiguity:

> If obligation were interpreted to refer to the entire amount that matures and becomes payable on a given date, without regard to whether any part of the amount accrued prepetition, then . . . § 365(d)(3) would conflict with, and constitute an exception to, the provisions governing claims. Section 365(d)(3) expressly indicates that it is meant to constitute an exception to the provisions of the Code governing administrative expenses, which are strictly postpetition in nature, but it does not state that it is meant to constitute an exception to the provisions governing claims. Therefore,

without looking behind the language of the Code itself, one can fairly question whether Congress intended by § 365(d)(3) to require payment of amounts that accrued pre-petition. The statutory language is inherently ambiguous; and courts are well justified in looking beyond it to understand the legislative intent.

*In re Learningsmith, Inc.,* 253 B.R. 131, 134 (Bankr.D.Mass.2000) (footnotes omitted). "Obligation" can conflict with the Bankruptcy Code provisions that govern claims as well as have conflicting definitions. A debtor's "obligation" under a nonresidential real property lease may arise as it is accrued, or it may arise when the landlord submits the bill to the debtor-tenant.

Basing its conclusion in the principles of equity, the accrual approach finds that a debtor's "obligation" under § 365(d)(3) arises as it is accrued. The Bankruptcy Code does not define when property taxes are "incurred" by a debtor's estate. The Sixth Circuit Court of Appeals has found that "a tax is incurred when it accrues and becomes a fixed liability." *White Plains, N.Y. v. A & S Galleria Real Estate (In re Federated Dep't Stores, Inc.),* 270 F.3d 994, 1001 (6th Cir.2001) (citations omitted). Another bankruptcy court has held that "[a] tax is incurred on the date it accrues, not on the date of assessment or the date on which it is payable." *In re Bondi's Valu–King, Inc.,* 102 B.R. 108, 110 (Bankr. N.D.Ohio 1989) (internal quotes omitted). This is the same rationale as articulated in *Handy Andy Home Improvement Centers, Inc.* The Seventh Circuit Court of Appeals stated:

> But since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994

and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force.

*In re Handy Andy Home Improvement Ctrs., Inc.,* 144 F.3d. at 1127. A tax obligation, pursuant to the accrual approach, arises as it accrues; prorating the accrued obligation, then, is an equitable means of interpreting the ambiguity in § 365(d)(3).

The majority of courts finding the statute ambiguous also finds that the legislative history supports this conclusion. The statute's legislative history explains that Congress sought only to ensure that a landlord received "current payment" for "current services." *See e.g., In re Child World, Inc.,* 161 B.R. at 575. The majority of courts finds that "[t]he legislative history provides compelling evidence that Congress did not intend § 365(d)(3) to include debtor-tenants' rental obligations arising prepetition, but billed postpetition." *Id.* at 574. Senator Hatch explained Congress' reasons for creating § 365(d)(3).

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.
>
> . . .
>
> A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease.

*Id.* at 575 (citation omitted). There is, then, "[n]othing in the legislative history [to indicate] that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the post-petition, prerejection period, regardless of billing date." *Id.* at 575–76. The majority of courts follows the pre-Code practice of prorating debtors' obligations during the post-petition, pre-rejection period because there is nothing specific in the legislative history to indicate otherwise. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,* 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (citation omitted). *See also U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 252, 109 S.Ct. 1026, 103 L.Ed.2d 290 (O'Connor, Brennan, Marshall and Stevens, J.J., dissenting) (1989) (stating that when a bankruptcy statute is vague, it "will not be deemed to have changed pre-Code law unless there is some indication that Congress thought that it was effecting such a change."). *Id.* As a result of this rule of statutory construction, the majority of courts follows the pre–1984 practice of prorating a debtor's obligations regardless of the billing date.

### C. Minority Position

A substantial minority of courts, however, has held that under § 365(d)(3), a debtor-tenant under a nonresidential property lease must pay in full all bills received from the landlord during the post-petition, pre-rejection period, regardless of when those charges accrued.[6] *See e.g., Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 268 F.3d 205, 211 (3d Cir.2001); *In re Koenig Sporting Goods, Inc.,* 203 F.3d at 989–90; *In re Comdisco, Inc.,* 272

---

**6.** This is known as the "Billing Date Approach."

B.R. 671, 674–75 (Bankr.N.D.Ill.2002); *In re The 1/2 Off Card Shop, Inc.*, 2001 WL 1822419, 2001 Bankr.LEXIS 988, *10 (Bankr.E.D.Mich.2001); *In re Krystal Co.*, 194 B.R. 161, 164 (Bankr.E.D.Tenn.1996); *In re F & M Distribs., Inc.*, 197 B.R. 829, 833–34 (Bankr.E.D.Mich.1995); *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965, 976 (D.Kan. 1993); *In re R.H. Macy & Co., Inc.*, 152 B.R. 869, 874 (Bankr.S.D.N.Y.1993); *In re Appletree Mkts., Inc.*, 139 B.R. 417, 418–21 (Bankr.S.D.Tex.1992). These courts find § 365(d)(3) to be unambiguous and follow the plain language of the subsection without regard to any equitable or policy considerations. *See In re F & M Distribs., Inc.*, 197 B.R. at 832; *In re R.H. Macy & Co., Inc.*, 152 B.R. at 873–74; *In re Krystal Co.*, 194 B.R. at 163. In analyzing the language of § 365(d)(3), these courts find the words "obligation" and "arise" sufficiently unambiguous so as to make it clear that real estate taxes must be paid in full, without proration, at the time they come due under the terms of the lease, during the pre-rejection period. *See In re Krystal Co.*, 194 B.R. at 162; *In re F & M Distribs., Inc.*, 197 B.R. at 831–32.

### D. The Instant Case

■ In this case, Landlord argues that § 365(d)(3) is clear and unambiguous, and the obligation of Debtor to pay the 2001 and 2002 taxes arose following the entry of the order for relief but prior to Debtor's rejection of the lease. Landlord argues that § 365(d)(3) "was intended to alleviate the ... burdens on landlords by requiring timely compliance with the terms of the lease." Landlord's Mem. of Law at 3–4 (quoting *In re Montgomery Ward Holding Corp.*, 268 F.3d at 210). Landlord cites the *Koenig* decision for the broad proposition that if rent, taxes or other charges are due and owing by a debtor post-petition, but prior to assumption or rejection of a lease, those charges must be paid in full.

Debtor argues that the *Koenig* decision is distinguishable on its facts and limited in its application. Debtor argues that requiring a debtor to pay the entire amount of the taxes charged, when the majority of those taxes relate to time periods either before the petition date or after the rejection date, would be contrary to the fundamental principle of equality of distribution under the Bankruptcy Code. Debtor also argues that the lease in this case allows for proration during the last year of the lease.

The lease states that Debtor is to pay its proportionate share of the tax at the same time as when the tax is due or upon receipt of a bill setting forth the proportionate amount owed. The lease at section 12(f) states that "[a]ny amount payable by Tenant to Landlord under this paragraph shall be paid by Tenant to Landlord within thirty (30) days of the date due or upon receipt by Tenant from Landlord of a bill setting forth such amount whichever is later." Stipulation, Ex. A at 23. This section can be interpreted to mean that the tax obligation arises when Debtor receives a bill: an example of the billing date approach. The stipulation does not state when the 2001 or 2002 taxes were to be paid by Debtor.

Landlord billed Debtor in July 2002 and August 2002 for the 2001 and 2002 taxes, respectively. The billing date approach would create an unfair tax liability for Debtor in this case. To follow the billing date approach in these circumstances would allow landlords to manipulate the billing date and improve their priority, as in this case.

While the lease does not address this particular situation, it does provide for proration in the last year of the lease. The lease at section 12(c) states "with respect to the first and last Lease Years of

the Term, the Taxes for the then current tax year or years and the Tax Charge payable by Tenant shall be prorated as of the Commencement Date and the end of the last Lease Year." Stipulation, Ex. A at 22. The parties agreed to this provision. Once Debtor rejected the lease in 2002, that became the last lease year. While it may be ambiguous when the obligation to pay the taxes arose, it is clear that the parties intended to prorate the taxes for the last lease year.

There can be a tension between contract law and the Bankruptcy Code in cases such as this. "Section 365 ... was carefully drafted to maintain a delicate balance between debtors' and creditors' rights." *Mazirow v. Grigsby (In re White Motor Corp.)*, 44 B.R. 563, 568 (N.D.Ohio 1984). In this case, the lease provision allowing for proration merges with the equitable bankruptcy consideration that a debtor-tenant of nonresidential real property is obligated to pay that portion of tax bills which accrued from the date of the filing of the petition for relief until the lease is either assumed or rejected.

Landlord relies on *Koenig*, but that case only addressed the application of 11 U.S.C. § 365(d)(3) to the specific facts presented in that case: a monthly lease payment coming due during the post-petition, pre-rejection time period. *Koenig*, 203 F.3d at 989. That case did not conclude that the result would be the same in any other circumstances. *Id.* *Koenig* was appealed to the Sixth Circuit Court of Appeals from a Bankruptcy Appellate Panel decision. The Sixth Circuit B.A.P. decision stated, "this interpretation of § 365(d)(3) must be confined to these facts. Left for another day is the question whether ambiguities of interpretation arise under § 365(d)(3) when a nonresidential lease requires sub-stantial payments in arrears or imposes obligations that are fundamentally inconsistent with other provisions of the Bankruptcy Code." *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 229 B.R. 388, 394 (6th Cir. BAP 1999). *Koenig* is limited to its particular facts.

This Court finds persuasive the reasoning of another bankruptcy court:

> [T]he Sixth Circuit cases of *Koenig*, 203 F.3d 886 [986], and *Vause*, 886 F.2d 794 (6th Cir.1989), are not compelling to this factual situation. Those two chapter 11 cases involved rent, *not taxes*- in *Koenig*, monthly rent on a sporting goods store, due on the first day of each month or, in other words, in advance; in *Vause*, annual rent on a farm, due at the end of the year or, in other words, payable in arrears. Reliance by counsel for Pilot on *Koenig*, although decided under [Section 365(d)(3) ][7] unlike *Vause* which was decided under Section 502(b)(6), is misplaced. The opinion in *Koenig* was rendered in the context of 'a month-to-month, payment-in-advance lease.' In sum, both cases out of the Sixth Circuit were decided under the unique facts of those cases.

*In re Oscar Hornsby, Inc.*, 2001 Bankr.LEXIS 1062, *6 (holding that debtor-tenant of non-residential real property is obligated to pay that portion of tax bills which accrued from the date of the filing of the petition for relief until the lease is either assumed or rejected). Likewise, *Comdisco* distinguished tax obligations from periodic rental payments. The difference is in the economic reality of the charges. Taxes are "costs incurred in the past that have no present relevance to the operations of the debtor." *In re Comdis-*

---

7. The opinion cites to § 363(d)(3) at this point, but it is clear from both reading the opinion and the *Koenig* case itself that the court is citing to § 365(d)(3).

*co, Inc.*, 272 B.R. at 674. Monthly rental payments, on the other hand, are "a charge for the consumption of a resource ...." *Id.* at 675. Real estate tax obligations differ from monthly rental payments in the way they accrue.

Monthly rental payments should be paid regularly and promptly during the post-petition, pre-rejection period because the debtor is using the landlord's resource. Tax obligations, on the other hand, are incurred as they accrue. Prorating the accrued tax obligations in this case is equitable because debtors in Chapter 11 should be relieved of past expenses that have no present relevance to the present operation of the company. Debtors are given the opportunity in Chapter 11 to emerge as reorganized, profitable entities. To follow the billing date approach in this case would unduly burden Debtor.

## CONCLUSION

Landlord's amended request for administrative expenses is sustained in part and overruled in part. The administrative expenses are allowed to the extent that the real estate tax obligation is prorated from the petition date to the rejection date. The Court adopts the parties' stipulations as to the prorated amounts that Debtor owes.