**In re NETTEL CORPORATION, INC. and NETtel Communications, Inc., Debtors.**

No. 00–01771.

United States Bankruptcy Court, District of Columbia.

April 24, 2002.

Charles H. Camp, Cadwalader, Wickersham & Taft, Washington, D.C., Howard W. Kingsley, Rosenberg & Estis, P.C., New York City, for Lazlo N. Tauber & Associates I, LLC and 135 West 50, LLC.

Linda M. Correia, Webster, Fredrickson & Blackshaw, Washington, D.C., for Wendell W. Webster, Chapter 7 Trustee.

John G. McJunkin, Alan M. Noskow, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, D.C., for creditor Nortel Networks Inc.

Daniel M. Litt, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, D.C., for Allied Capital Corp.

### DECISION RE MOTION OF LASZLO N. TAUBER & ASSOCIATES I, LLC AND 135 WEST 50 LLC FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

S. MARTIN TEEL, Jr., Bankruptcy Judge.

A landlord[1] has filed a motion invoking § 365(d)(3) of the Bankruptcy Code (11 U.S.C.) to seek payment of its chapter 7 administrative expense claim for rent for commercial real property that was leased to the debtor NETtel Corporation, Inc. ("NETtel") under a prepetition lease. The court holds:

1. The rent claim is entitled to no superpriority over other chapter 7 administrative claims, and hence is not entitled to immediate payment unless it becomes evident that all chapter 7 administrative claims will be paid in full; and

2. Rent "arises" for purposes of § 365(d)(3) in an accrual sense, meaning during the corresponding period of occupancy, such that the rent owed as a chapter 7 administrative claim by virtue of § 365(d)(3) must be fixed by prorating the monthly rent to the number of days during the period of pendency of the chapter 7 case to the date of rejection of the lease. Accordingly, the ad-

---

1. The landlord, Laszlo N. Tauber & Associates I, LLC, and the managing agent, 135 West 50, LLC, are the movants but the court will collectively refer to them as the landlord.

ministrative claim does not include rent that was due prerejection with respect to a right of occupancy in a postrejection period.

## I

NETtel's lease provided that the annual Base Rent shall be paid "in equal monthly installments in advance of the first day of each month during the Term." NETtel filed its voluntary petition under chapter 11 of the Bankruptcy Code on September 28, 2000. The case was converted to chapter 7 on October 23, 2000, and the following day Wendell W. Webster was appointed chapter 7 trustee ("the Trustee"). After the conversion of the case, the Trustee failed to pay any portion of the overdue October rent payment,[2] and failed to pay the November and December rent payments due respectively on October 31 and November 30, 2000. Prior to rejection of the lease in the midst of December 2000, the landlord took no action to compel the debtor-in-possession or the Trustee to pay rent for postpetition occupancy.

The Trustee informed the landlord of his intention to reject the lease on October 31, 2000, but apparently remained in possession of the premises until December 15, 2000. The Trustee filed a Motion to Reject Unexpired Leases and Executory Contracts on December 15, 2000, and on December 26, 2000, the court entered an order granting the Trustee's motion to reject the lease at issue here *nunc pro tunc* to December 20, 2000. The landlord took no appeal from that order. On June 15, 2001, the landlord filed its motion, opposed by the Trustee,[3] seeking payment for the two months of Base Rent that were payable under the lease prior to November 1 and December 1, 2000.

## II

██ The landlord argues that whatever rent it is awarded for the chapter 7 period of the case, § 365(d)(3) requires the court to order the Trustee to make immediate payment of such rent regardless of any insufficiency of estate assets to pay all chapter 7 administrative claims in full. The court rejects that argument because § 365(d)(3) confers on a landlord no superpriority over other chapter 7 administrative claims. *See In re Microvideo Learning Sys., Inc.,* 232 B.R. 602 (Bankr. S.D.N.Y.), *aff'd,* 254 B.R. 90 (S.D.N.Y. 1999), *aff'd on basis of bankruptcy court's decision,* 227 F.3d 474 (2d Cir.2000); *In re LPM Corp.,* 269 B.R. 217 (9th Cir. BAP 2001), *aff'g* 253 B.R. 914 (Bankr.S.D.Cal. 2000). The landlord has not shown that there will be sufficient funds to pay all chapter 7 administrative claims in full. It is thus inappropriate to order immediate payment.[4]

---

**2.** The landlord's motion does not address rent for the period after the filing of the petition on September 28, 2000, and prior to conversion of the case to chapter 7 on October 23, 2000. As a debtor-in-possession in the chapter 11 case, NETtel was obligated under 11 U.S.C. § 1107(a) to comply with a trustee's duties under § 365(d)(3). Under 11 U.S.C. § 301, NETtel's commencement of its voluntary case, through the filing of its voluntary petition, constituted an "order for relief" (the event after which an obligation must arise in order to be covered by § 365(d)(3)). However, NETtel never made the October rent payment that was payable by September 30,

2000, and did not pay for occupying the leased premises on September 29 and September 30, 2000.

**3.** Two creditors also opposed the landlord's motion for immediate payment, but the court will refer to the Trustee and these creditors collectively as the Trustee in addressing their contentions.

**4.** This case does not present the quite different issue of whether the landlord's rent payments required by § 365(d)(3), once made, are subject to disgorgement. *See Microvideo,* 232 B.R. at 607; *L.P.M. Corp.,* 253 B.R. at

## III

 The remaining issue in dispute is whether the rent for December 2000 should be awarded in full, or only in a prorated amount (to the date of rejection), as a chapter 7 administrative claim. The parties are in agreement that if the court agrees with the Trustee and prorates the rent for December 2000, it must also prorate the rent for October 2000, such that the landlord's allowable chapter 7 administrative rent claim would run from October 23, 2000 (the date of conversion) until December 20, 2000 (the date of rejection).

### A.

Pursuant to the 1984 amendments to the Bankruptcy Code, the pertinent portion of § 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[5]

For purposes of § 365(d), the conversion order is treated as the order for relief in the chapter 7 case. 11 U.S.C. § 348(c). So in this case, § 365(d)(3) required that the Trustee "timely perform all the obligations of the debtor . . . arising from and after [October 23, 2000] . . . under [the] lease . . . until [December 20, 2000]." The issue is thus whether the rent owed for the postrejection period of December 21, 2000 through December 31, 2000 was an obligation arising prior to rejection.

Upon rejection of a commercial lease, the trustee abandons his right to enjoy occupancy under the lease.[6] Accordingly, the Trustee here had no right of occupancy after December 20, 2000.

The landlord argues that § 365(d)(3) is governed by a performance date approach (instead of a proration approach), and thus required the Trustee to pay the full amount of the December rent (which was due by November 30, 2000, pursuant to the terms of the lease), even though the Trustee had no right of occupancy after rejection of the lease on December 20, 2000.

The critical economic burden contractually imposed on a landlord prior to rejection is the number of days that a trustee had the right of occupancy, and, correspondingly, that the landlord provided the space and services incident thereto (such as payment of taxes and utilities). Unless § 365(d)(3) has a plain meaning that precludes any other interpretation, it is undesirable to interpret § 365(d)(3) as operating in a manner (as it would under the

---

919. To the extent that under the proration approach the court adopts here, a landlord was entitled to payment under § 365(d)(3), the landlord would enjoy the same rights as any other trade creditor paid during the administration of the case with respect to retaining payments made prerejection for services the trustee received prerejection.

5. Section 503(b)(1)(A) provides, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including the actual, necessary costs and expenses of preserving the estate . . . ."

6. Indeed, 11 U.S.C. § 365(d)(4) specifically commands that the trustee shall immediately surrender possession when the trustee fails to assume or reject a lease within 60 days after the date of the order for relief (or a court-authorized enlargement of that time). Section 365(d)(4) was inapplicable here because the Trustee moved to reject the lease prior to the end of the 60–day period (and because the court ordered the lease rejected effective December 20, 2000, which was also within the 60–day period). However, § 365(d)(4) is a recognition of the estate's ceasing to have a right under the lease to enjoy occupancy once the lease is rejected.

performance date approach) that depends on the fortuity of the time of the month of the order for relief or the rejection of the lease.

Under the performance date approach, a trustee would be obligated to pay for a full year's rent that came due immediately after the order for relief even if the lease were rejected prior to the commencement of the year of occupancy covered by the payment. Congress did not likely intend such absurd results.

### B.

Section 365(d)(3) addresses only those obligations "arising" after the order for relief and prior to rejection. The term "arising" is susceptible of being used in an accrual sense: a rental obligation arises **under the lease** based on the corresponding period of occupancy **under the lease.** A landlord's entitlement to compensation for occupancy at a fixed periodic rate relates to the actual days the tenant was entitled to occupancy, and in a practical and fundamental economic sense can be said to arise on each occupancy day. The compensation for occupancy on a particular date may be payable in advance of that date (or may be payable subsequent to that date), but in the economic and historical senses that Congress had in mind, the compensation obligation arises on the date of occupancy. Here, the Base Rent, the obligation at issue, "could realistically be said to have arisen piecemeal every day." *In re Handy Andy Home Improvement Ctrs., Inc.,* 144 F.3d 1125, 1127 (7th Cir.

1998).[7] Section 365(d)(3) is sufficiently flexible to accommodate this view of when an obligation arises:

> While the terms of the lease determine the obligation, the statute says nothing about how to determine when the obligation arises. Nothing in the text is inconsistent with the common-sense view that when an obligation arises may be fixed by the intrinsic nature and/or by the extrinsic circumstances of its accrual.

*Centerpoint Props. v. Montgomery Ward Holding Corp.,* 268 F.3d 205, 213 (3d Cir. 2001) (Mansmann, J., dissenting). In other words, § 365(d)(3) addresses a trustee's obligation to pay for the right of occupancy[8] during the period after the order for relief and prior to rejection of the lease. The fundamental principle of § 365(d)(3)

> is that landlords, like other post-petition creditors, should receive full and timely payment for post-petition services.

*Montgomery Ward,* 268 F.3d at 213 (Mansmann, J., dissenting). This achieves fairness both for landlords and for bankruptcy estates.

First, the obligations under the lease with respect to the right of occupancy after the order for relief may be treated as an obligation arising under the lease after the order for relief even if the applicable rent payment was due prior to the order for relief. Otherwise, with respect to a trustee's obligation to pay for the right of occupancy during the period following the order for relief and prior to rejection, the

---

**7.** That is why § 365(d)(3) obligated the Trustee here to pay as a chapter 7 administrative claim the portion of the October, 2000 rent attributable to the portion of October, 2000 that was after the date of conversion of the case to chapter 7 on October 23, 2000, even though the rent for the month of October 2000 came due while the case was in chapter 11.

**8.** The court refers to paying for "the right of occupancy" instead of paying for "occupancy" because § 365(d)(3), in contrast to prior law, views any lack of occupancy as irrelevant in fixing the amount the estate owes.

landlord would be put to the vagaries of § 503(b) (which allows an administrative claim for use of leased property based on the benefit to the estate, and hence based on the value of actual use as opposed to the contract rate), a result § 365(d)(3) was intended to avoid. Second, the obligation to compensate the landlord with respect to the right of occupancy during the postrejection period similarly accrues, and hence arises, during that postrejection period. Although that compensation may be payable by the terms of the lease prerejection, the obligation is fundamentally one that arises postrejection.[9] Otherwise, the landlord would be compensated for a period during which the landlord was not required to provide services.

Viewing the term "arises under" in its accrual sense is most consonant with the spirit of § 365(d)(3) itself as well as the Bankruptcy Code as a whole. The accrual approach is supported both by reading § 365(d)(3) in the context of a rich history surrounding the treatment of lease obligations in bankruptcy (point 1, below) and by the purposes of § 365(d)(3) as analyzed in numerous decisions supporting the accrual approach (point 2, below).

### 1.

■ The most important context for evaluating whether an obligation "arises" under the lease prior to rejection is that of the purposes of assumption and rejection. Assumption entitles the estate to the benefits of a lease, but also saddles the estate with all obligations under the lease as an administrative claim. Rejection is the opposite of assumption. *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev.)*, 19 F.3d 1077, 1082 (5th Cir.1994) ("Throughout § 365, rejection refers to the debtor's decision not to assume a burdensome lease or executory contract."), *cert. denied*, 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994). Upon rejection, in contrast to assumption, the estate is not burdened with the obligations under the lease as an administrative claim. Instead, under 11 U.S.C. §§ 365(g) and 502(g), rejection constitutes a breach, and the breach is deemed to have arisen prepetition. *See In re Lavigne*, 114 F.3d 379, 384–85 (2d Cir.1997).[10]

■ Accordingly, looking to the postrejection period, the Bankruptcy Code works this way: rejection ends the trustee's further entitlement to enjoy the right of occupancy under the lease in the period after rejection, and in exchange the estate is relieved of the liability for such future right of occupancy as an administrative claim.[11] As long as the estate has ceased occupancy of the property by the date of rejection, the estate is saddled with liability for the postrejection period only as a prepetition claim (entitling the landlord in a chapter 7 case to share pro rata, under 11 U.S.C. § 726(a), with holders of other general unsecured claims in whatever is

---

9. Here, because § 365(d)(3) addresses only a trustee's obligation to pay for the right of occupancy during the period prior to rejection of the lease, § 365(d)(3) is inapplicable with respect to the December 2000 rent attributable to the right of occupancy during the postrejection period of December 21 through December 31, 2000.

10. However, despite not assuming the lease and its obligations, the trustee is obligated to compensate a landlord for the benefit to the estate of the trustee's use of the property prior to rejection. When the lease is a commercial lease, § 365(d)(3) compels the trustee to pay for such use as prescribed by the lease, not as under old law at fair market rates.

11. "Rejection ... means that the bankruptcy estate *itself will not become a party to* [the lease]." Michael T. Andrew, *Executory Contracts in Bankruptcy; Understanding "Rejection"*, 59 U. Colo. L.Rev. 845, 848 (1988).

left after payment of administrative and other priority claims).

Accordingly, there ought not be any administrative claim attributable to the estate's nonexistent right of occupancy during the postrejection period, otherwise the estate will be saddled with a burden that rejection is designed to avoid. Section 365(d)(3) ought to be viewed as dealing with the obligations arising under the lease for the estate's right to use the property in the period after the petition and prior to rejection, and as fixing that compensation at the rate provided by the lease.

2.

*Handy Andy*, 144 F.3d at 1128, refused to follow the performance date approach under § 365(d)(3). The court reasoned that the statute must be addressed in context, and "[w]hen context is disregarded, silliness results," *Handy Andy*, 144 F.3d at 1128, including the potential for converting prepetition debt into a postpetition administrative claim by virtue of the timing of payment of such debt under the lease. Numerous other courts have similarly found the language of § 365(d)(3) to be sufficiently ambiguous to justify such a contextual approach.[12] Thus, it is appropriate to turn to the legislative history of § 365(d)(3), the structure and purpose of the Bankruptcy Code as a whole, and pre–1984 law. As *Handy Andy* ably demonstrates, the language and limited legislative history of § 365(d)(3) do not support the elimination of the pre–1984 practice of proration, used to implement fundamental bankruptcy principles, when addressing a landlord's request for allowance of an administrative claim.

The enactment of § 365(d)(3) addressed two problems: first, the landlord was given the right to rent payments contemporaneous with its provision of services to the debtor during the post-order-for-relief, prerejection period (and to seek relief if those payments were not made), and, second, the landlord's claim for occupancy was to be fixed by the rental terms of the lease, not by the "actual, necessary" provision of § 503(b)(1) that governs allowance of administrative claims in general and that might limit reimbursement to the reasonable value of the trustee's actual use of the property. *See Handy Andy*, 144 F.3d at 1128. However, § 365(d)(3) was not intended to pay landlords for services not actually provided to the estate. *Best Prods.*, 206 B.R. at 407. Although § 365(d)(3) eliminates the application of § 503(b)(1) to services actually provided during the period after the order for relief and prior to rejection, nothing in § 365(d)(3) itself plainly requires the elimination of the pre–1984 practice of prorating administrative expenses to include only those arising by virtue of the right of occupancy under the lease during the post-order-for-relief, prerejection period. *Handy Andy*, 144 F.3d at 1128; *Child World*, 161 B.R. at 575–76; *McCrory*, 210 B.R. at 939; *Best Products*, 206 B.R. at 406–07.

The performance date approach in applying § 365(d)(3) often converts what would be prepetition debt (attributable to either pre-order-for-relief occupancy or post-rejection occupancy) into an administrative claim, thereby violating the princi-

---

**12.** *See, e.g., In re Learningsmith, Inc.,* 253 B.R. 131, 133–34 (Bankr.D.Mass.2000); *Centerpoint Props. Trust v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 242 B.R. 142, 145 (D.Del.1999), *rev'd,* 268 F.3d 205 (3d Cir.2001); *Newman v. McCrory Corp. (In re McCrory Corp.),* 210 B.R. 934, 939 (S.D.N.Y.1997); *Child World, Inc., v. Campbell/Massachusetts Trust (In re Child World, Inc.),* 161 B.R. 571, 574 (S.D.N.Y. 1993); *In re Travel 2000, Inc.,* 264 B.R. 444, 450 (Bankr.W.D.Mich.2001); *Santa Ana Best Plaza, Ltd. v. Best Prods. Co. (In re Best Prods. Co.),* 206 B.R. 404, 406 (Bankr.E.D.Va.1997).

ple of creditor equality and distorting the priority and distribution provisions of other sections of the Bankruptcy Code. *McCrory*, 210 B.R. at 939–40; *Best Prods.*, 206 B.R. at 407. Without clearly indicating an intent to do so, Congress did not likely intend to upset these settled principles and priorities when it enacted § 365(d)(3). *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure"). Section 365(d)(3) does not warrant converting what would otherwise be prepetition debt into postpetition debt entitled to treatment as an administrative claim entitled to priority over prepetition unsecured debt.

Accordingly, in *Handy Andy*, § 365(d)(3) did not entitle the landlord to utilize the performance date approach to convert a claim for compensation for usage prepetition into an administrative claim. Similarly here, § 365(d)(3) ought not convert the claim for breach of the debtor's obligation to pay for the right to use the premises during the period after rejection (which §§ 365(g) and 502(g) treat as a prepetition debt) from a prepetition debt to an administrative claim.

Indeed, the goal stated in the legislative history of providing landlords with current payment for current services could be frustrated if proration were rejected. If the period of occupancy to which a rental payment relates is during the period after the order for relief and prior to rejection, proration is necessary to protect the landlord in two situations:

- when the lease calls for rent to be paid in **advance** on a date preceding the order for relief; and
- when the lease calls for rent to be paid in **arrears** on a date after the rejection of the lease.

*In re Travel 2000*, 264 B.R. at 447; *see also Handy Andy*, 144 F.3d at 1128; *Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig Goods, Inc.)*, 229 B.R. 388, 396 (6th Cir. BAP 1999) (Rhodes, J., dissenting), *decision of majority aff'd*, 203 F.3d 986 (6th Cir.2000); *Child World, Inc.*, 161 B.R. at 576; *Best Prods.*, 206 B.R. at 404.

## C.

The court is unpersuaded by the majority opinion in *Montgomery Ward*, 268 F.3d at 205, and the opinion in *Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig Sporting Goods)*, 203 F.3d 986 (6th Cir. 2000), and similar lower court decisions that take a different approach from this court.

### 1.

In *Montgomery Ward*, the debtor filed for bankruptcy under chapter 11 on July 7, 1997. *Montgomery Ward*, 268 F.3d at 207. The lease in question expired on September 1, 1997, and the debtor neither assumed nor rejected the lease before its expiration. *Id.* On July 11, 1997, the debtor's landlord, CenterPoint, sent three invoices for taxes to the debtor: two invoices were for 1996 taxes and the third was for 1997 taxes. *Id.* After the debtor paid only the prorated portion of the 1997 taxes attributable to the postpetition period, the landlord filed its motion under § 365(d)(3) seeking full payment of all the taxes. *Id.* at 207–08.

The panel in *Montgomery Ward* was split 2 to 1.[13] In adopting the performance

---

13. In an opening passage that really added nothing to resolving the issue before the panel, the majority held that the word "from" in

§ 365(d)(3) modifies lease, so that § 365(d)(3) is read as referring to "obligations arising from[,] and after the order of relief under[,]

date approach, the majority opinion reasoned as follows:

> The issue for resolution then is what Congress meant when it referred to "obligations of the debtor arising under a lease after the order of relief." In the factual context of this case, does it require payment by the trustee of all amounts that first become due and enforceable after the order under the terms of the lease? Or does it require the proration of such amounts based upon whether the landlord's obligation to pay the taxes accrued before or after the order?
>
> We believe that to state these questions is to answer them. The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the "obligation" and when it "arises." If one accepts this premise, it is difficult to find a textual basis for a proration approach. On the other hand, an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably with the statutory text.

*Id.* at 208–09.

The court disagrees with the Third Circuit's conclusion that "it is difficult to find a textual basis for a proration approach." The statute does contemplate that the lease terms govern when the trustee should "timely perform" an obligation.

However, as I have already discussed, the statute addresses only obligations "arising" after the order for relief and prior to rejection, and given the purpose behind rejection of leases in bankruptcy, Congress must have intended that rental obligations "arise" on an accrual basis at the same time as the corresponding right of use and occupancy. To the extent that an obligation relates to the right of occupancy during the postrejection period (a right the estate itself no longer enjoys after rejection), it is to that extent not an obligation that arises after the order for relief and prior to rejection. Although the lease may specify a different date for paying a rental obligation for the postrejection period, that obligation arises as it accrues over time, not when the payment is due.

## 2.

In *Koenig*, the debtor filed a petition under chapter 11 of the Bankruptcy Code in August 1997, and the lease at issue was rejected on December 2, 1997. *Koenig*, 203 F.3d at 988. Prior to rejection, the debtor had not paid the December rent which was due on December 1, 1997. *Id.* The debtor contended that it was required to reimburse the landlord for only two days' rent, for December 1 and 2, and not for the full amount of the monthly rent. *Id.* Although the court of appeals found § 365(d)(3) to be unambiguous "[u]nder these circumstances," *id.* at 989, it contrasted the case to one in which a statute was found to be ambiguous based on unique facts or inequities, *id.* at 990.[14]

---

any unexpired lease." *Id.* at 208. This court disagrees. The word "from" in the phrase "arising from and after the order for relief" refers to its closest subject, "the order for relief." With "from" read that way, the clause "from and after" is but an example of a "redundant pair" often found in the English language and used for emphasis. *Montgomery Ward,* 268 F.3d at 212 n. 1 (dissenting

opinion). However, whichever interpretation of "from" is followed has no impact on the ultimate issue of whether the obligations required to be performed are fixed by way of proration or by way of the performance date.

**14.** Similarly, the bankruptcy court had qualified its holding by noting that it might reach a different conclusion if the result would be

The court of appeals believed that the landlord was not receiving any windfall because the debtor in possession could have controlled the date of rejection to occur prior to the date the rent was due.[15] The court of appeals in *Koenig* failed to articulate more fully its reasons for finding the statute unambiguous, and is thus unpersuasive on that score.[16]

## D.

This case is slightly different from *Handy Andy* because the December 2000 rent became payable prior to it being clear that a portion of that rent, by reason of the mid-month rejection of the lease, would be treated by §§ 365(g) and 502(g) as a prepetition claim. That makes no difference.

### 1.

Although *In re Comdisco, Inc.*, 272 B.R. 671 (Bankr.N.D.Ill.2002), distinguished *Handy Andy* on precisely that basis, it is unpersuasive.

*Comdisco* held that a monthly rent payment that came due prerejection could not be prorated between the prerejection and postrejection portions of the month. The court reasoned, first, that proration is a § 503(b) concept, and that § 365(d)(3) compels performance regardless of § 503(b). *Id.* at 675–76. That misses the point: the issue is whether § 365(d)(3), divorced from § 503(b), nevertheless embodies a proration approach. In compelling payment of rent for occupancy during the prerejection period, § 365(d)(3) does not purport to negate the traditional notions of when a claim relating to rights under a lease will be classified as arising during the period after the order for relief and prior to the rejection of the lease. An obligation to compensate for occupancy during the postrejection period is not treated as an administrative claim arising in the prerejection period by the happenstance of the due date of payment: instead, the claim is converted to a prepetition claim by §§ 365(g) and 502(g) even if the date for payment matured prerejection. To advance the legislative intent, and to remain consistent with past bankruptcy doctrine that ought not be undone

awarding an entire year's rent for only two days' occupancy. *In re Koenig Sporting Goods, Inc.*, 221 B.R. 737, 741 (Bankr.N.D.Ohio 1998). The bankruptcy court reasoned that the lack of precision in the language of § 365(d)(3) may indicate Congress intended courts to exercise discretion where fundamental bankruptcy principles would be "severely distort[ed]." *Id.* In affirming the bankruptcy court, the bankruptcy appellate panel had also limited the adoption of the performance date approach to the facts before it. *Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig Sporting Goods)*, 229 B.R. 388, 394 (6th Cir. BAP 1999) ("Left for another day is the question whether ambiguities of interpretation arise under § 365(d)(3) when a nonresidential lease requires substantial payments in arrears or imposes obligations that are fundamentally inconsistent with other provisions of the Bankruptcy Code.").

15. That premise is somewhat flawed because rejection of a commercial lease (other than deemed rejection under § 365(d)(4)) requires a court order. There are often cases in which the trustee, despite valiant efforts, is unable to obtain entry of the order of rejection prior to a payment for future occupancy being due under the lease.

16. The courts in *Koenig* recognized the potential under § 365(d)(3) for unusual circumstances that produce inequitable results or of unwarranted windfalls that severely distort bankruptcy principles. *See* n. 15, *supra*. That potential counsels interpreting the statute to avoid such results, if the statute is sufficiently ambiguous, as I think it is, to do so. It does not authorize an approach of treating the statute as plainly requiring a performance date approach when rent is payable monthly, but as not plainly requiring a performance date approach when rent (or some other lease obligation) is first payable many months in advance or is first payable many months afterwards.

absent a clearly expressed intention to do so, the ambiguous language of § 365(d)(3) can be read by itself as embodying proration.

The court in *Comdisco* reasoned, second, that:

> An obligation related to a past event may be said to originate when that event occurs, but an obligation to pay for the promise of future consideration originates or comes into being, not when the future consideration is provided, but when the payment is due.

*Id.* at 675. With all due respect, I believe that for purposes of § 365(d)(3) an obligation under a lease to pay rent may be just as readily said to originate with respect to the period of occupancy to which the rent relates: performance may be due in advance, but the compensation obligation arises as of the period of occupancy. Section 365(d)(3) cannot be separated from its historic moorings and the legislative purpose of assuring timely payment for services rendered to the estate in the prerejection period. A rent obligation under a lease for occupancy after the date of rejection arises postrejection because the service being compensated occurs postrejection. The outcome should be the same if the rent for the postrejection period first became payable:

- before the order for relief;
- after the order for relief and before rejection; or
- after rejection.

In all three cases, the rental obligation for such postrejection occupancy is an obligation arising during the postrejection period.

What § 365(d)(3) commands is that once the obligation for occupancy is classified as arising after the order for relief and prior to rejection, the obligation must be performed once the lease calls for the obligation to be performed. However, once the obligation is classified as arising postrejection, because it relates to postrejection occupancy, the timing of when the lease requires payment cannot alter the postrejection nature of the obligation.

2.

Had the landlord been before the court on December 1, 2000, insisting that the Trustee pay the overdue December rent, the court would have taken steps to enforce § 365(d)(3): a trustee is not entitled to shirk timely performance of his rent obligation based on the uncertain possibility that the obligation may turn out to be an obligation arising postrejection. Accordingly, the court could have ordered the payment of the December rent in full, with immediate rejection the consequence of a failure to pay. The court could have reserved the right to make that payment subject to later adjustment (in the event that the lease was rejected during December 2000), by way of a subsequent order directing the landlord to make disgorgement with respect to that part of December rent attributable to the postrejection period.

That approach towards § 365(d)(3) assures that the respective rights of the parties remain the same whether the trustee made payment prerejection or postrejection. In *Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401, 405 (9th Cir.1994), the court held that rent for the prerejection period should be paid at the lease rate and not subjected to the actual and necessary requirements of § 503(b)(1): the trustee could not force the application of the actual and necessary requirements of § 503(b) to a claim for rent accruing during the prerejection period by failing to pay rent on time as mandated by § 365(d)(3). By failing to pay the rent in this case, the Trustee has not attempted to force the proration

method on the landlord in contravention of § 365(d)(3): that proration method governs not only here, but would also have governed the parties' respective rights postrejection if the Trustee had paid the December rent prior to rejection of the lease on December 20 and the Trustee were now seeking to recover the rent allocable to the postrejection period.

This case is well beyond the posture of enforcing § 365(d)(3) as a condition to the trustee's right to assume, the lease having already been rejected and the property vacated.[17] "[T]here is a difference between the right to prompt payment and a claim for accrued but unpaid rents." *Omni Partners, LP v. Pudgie's Dev. of N.Y., Inc. (In re Pudgie's)*, 239 B.R. 688, 695 (S.D.N.Y.1999). Once a court has ordered a lease rejected in the midst of the month, neither the language of § 365(d)(3) nor its legislative history mandate the allowance of the full monthly rent as an administrative claim.

### IV

■ The parties have not briefed whether the chapter 7 rent claim includes rent, or a portion of the rent, for the date of entry of the order of conversion. The order of conversion and the clerk's docket reflecting its entry included no time of entry, and accordingly the landlord cannot establish when on October 23 the conversion occurred. Unless and until a party cites contrary authority, the court adopts a simple rule that is readily applied: the date of conversion does not count in computing post-conversion rent owed by a trustee as a chapter 7 administrative claim.

Based on proration of the monthly Base Rent of $13,985.76, the Trustee will be ordered to pay rent after the conversion date of October 23 through October 31 totaling $3,609.23, the full November rent totaling $13,985.76, and the December 1 through December 20 rent totaling $9,023.07.

### V

For the forgoing reasons, the court will grant the landlord's motion in part and deny it in part, allowing the landlord an administrative claim for the period after the conversion date of October 23, 2000, to December 20, 2000, in the amount of $26,618.06. The court's order follows.

---

17. After the September 28 filing, the landlord allowed the October, November, and December rents to go unpaid without seeking an order, prior to rejection, to enforce compliance with § 365(d)(3). The landlord waited until June 2001 to file a motion seeking payment of its rent for November and December.