**In re MANIS LUMBER CO., et al., Debtors.**

**Duke Realty Limited Partnership, Movant,**

v.

**North Metro Mill Work Distributors, Inc., Respondent.**

**No. 08–40398–PWB.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

Feb. 6, 2009.

Chris D. Phillips, G. Frank Nason, IV, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Debtors.

## ORDER WITH REGARD TO ADMINISTRATIVE EXPENSE CLAIM OF DUKE REALTY LIMITED PARTNERSHIP

PAUL W. BONAPFEL, Bankruptcy Judge.

### Statement of Facts and Issues

North Metro Mill Work Distributors, Inc. (the "Debtor") is one of the affiliated debtors in these jointly administered chapter 11 cases filed on February 11, 2008. The Debtor filed a motion on April 10, 2008, for approval under 11 U.S.C. § 365(a) of the rejection of its unexpired sublease of premises in a multi-tenant building from Duke Realty Limited Partnership ("Duke"). [113]. The Debtor requested that the rejection be effective as

of April 4, 2008, the date it vacated the premises and two days after the Court approved the sale of substantially all of the assets of the Debtor and its affiliates. [111]. Utilizing the Court's usual self-calendaring procedures, the Debtor scheduled a hearing on its motion for May 6, 2008.[115].

At the May 6 hearing, the Court approved the rejection of the sublease agreement, effective no later than May 6, and reserved for later determination the questions of whether rejection should be effective at an earlier time and the amount of postpetition rent to which Duke is entitled under the provisions of 11 U.S.C. § 365(d)(3). (Order Granting Motion to Approve Rejection of Lease Agreements [139] ). Duke's "Motion for Order to Compel Compliance With 11 U.S.C. § 365(d)(3) and to Compel Payment of Administrative Rent" [172] brings the reserved issues before the Court.

The sublease provides for the Debtor to pay, monthly in advance on the first day of each month, "base" rent of $27,233.50 and "additional" rent of one-twelfth of the estimated annual amount of the proportionate share of expenses charged by the prime lessor for items such as common area maintenance charges, taxes, and insurance. For the months in question here, the monthly amount of additional rent is $10,470.55. (The sublease provides for annual reconciliation of the amounts paid as additional rent with the final annual statement issued by the prime lessor for such charges, but neither of the parties have indicated that such reconciliation is material to resolution of the amount that the Debtor owes.) The total monthly rent, therefore, is $37,704.05.

The Debtor paid the February rent prior to the filing of its Chapter 11 petition

and the March rent when it was due. The controversy here is how much rent the Debtor must pay under the provisions of 11 U.S.C. § 365(d)(3) based on its vacating the premises on April 4, the filing of its motion to reject the sublease on April 10, and the Court's approval of the rejection at the hearing on May 6.

Section 365(d)(3) provides in pertinent part:

> The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding [11 U.S.C. § 503(b)(1) ].

In a voluntary Chapter 11 case like the Debtor's, the filing of the petition constitutes the order for relief. 11 U.S.C. § 301(b). Because no trustee has been appointed, the Debtor has the rights, powers, and duties of a trustee. 11 U.S.C. § 1107(a). As such, the Debtor's responsibility here is to represent the interests of the estate and its beneficiaries. With regard to this dispute, the beneficiaries with an interest in the outcome are prepetition creditors. They will not be paid in full, so the shareholders of the Debtor and its affiliates have no possible interest in the result.

Section 503(b)(1) provides for allowance of administrative expenses incurred during the course of a bankruptcy proceeding. Administrative expense claims generally have priority over prepetition claims. 11 U.S.C. § 507(a).[1] The reason for this priority, of course, is that it is essential to pay for goods and services that the bankruptcy estate needs during the administration of the case. Because payment of administrative expenses necessarily reduces amounts available for prepetition creditors, adminis-

---

1. The first priority in § 507(a)(1) for domestic support obligations is not applicable here.

trative expenses must be both reasonable and necessary to the administration of the case. Section 503(b) codifies these principles, which have their roots in the Bankruptcy Act of 1898 and the law of receiverships.

The Debtor contends that the Court has the discretion to approve rejection of the sublease retroactively to the date that it vacated the premises, April 4. Asserting that a debtor's obligations under a lease no longer "arise" upon its rejection, the Debtor asserts that it is liable for rent only to the extent that it accrues through the date of rejection. Thus, the Debtor concludes that it owes Duke the pro rata portion of the $37,704.05 monthly rent for the four days in April it actually occupied the premises. Based on daily rent of $1,256.80,[2] the amount for four days is $5,027.20.

Duke contends that rejection cannot be effective until the bankruptcy court approves it and that an obligation "arises" under a lease when it becomes due. Thus, Duke contends that the obligation of the Debtor to pay a full month's rent on each of April 1 and May 1 "arose" prior to rejection that occurred on May 6 such that the Debtor owes two months' rent, or $75,408.10.

The parties agree that the material facts, as stated above, are undisputed. For reasons set forth below, the Court concludes that the appropriate effective date for rejection of the sublease is April 20, 2008, ten days after the Debtor's filing of the rejection motion on April 10, and that the amount due to Duke under § 365(d)(3) is the prorated amount due for 20 days in April, which is $25,136 at the daily rate of $1,256.80.

*Discussion*

### I. Background of § 365(d)(3)

Controversies over the effective date of rejection of an unexpired lease and the extent to which an obligation "arises" under it prior to rejection did not exist prior to the addition of § 365(d)(3) in 1984. Under the Bankruptcy Code as originally enacted by the Bankruptcy Reform Act of 1978,[3] a landlord's entitlement to payment of postpetition rent depended on its allowance as an administrative expense under § 503(b)(1).

Allowance of an administrative expense under § 503(b)(1) requires that the expense be an "actual, necessary" expense of "preserving the estate." Consequently, prior to enactment of § 365(d)(3), landlords faced disallowance or reduction of postpetition rent if the trustee or debtor in possession used only a portion of the leased premises or if the value of the use of the space was less than the contractual rent. For example, the estate may have used retail space only for storage, or the rent may have been above market. Furthermore, because § 503(b) does not specify when administrative expenses must be paid and because administrative expenses are paid on a pro rata basis if assets of the estate are insufficient to pay all of them in full, payment of postpetition rent, even if allowed, might be deferred indefinitely and possibly paid only in part or not at all. Finally, from a procedural standpoint, landlords in some instances might be required to file a request for allowance and payment of an administrative rent claim and to bear the burden of proving the value of the estate's possession. Unlike other postpetition claimants who could withhold postpetition goods or services in

---

**2.** Because April has thirty days, the amount due each day in April based on the monthly contract rate of $37,704.05 is $1,256.80 ($37,-704.05 ÷ 30 = $1,256.80).

**3.** Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549.

the absence of payment on agreed terms, landlords were thus put in the position of being "involuntary creditors."[4]

Prior to enactment of § 365(d)(3), then, the effective date of rejection of a lease was not important. Because a landlord could not demonstrate that the estate had received any benefit after surrender of possession, a landlord had no basis for an administrative expense claim for postpetition rent beyond that time, regardless of when rejection occurred. Similarly, the extent to which an obligation for rent "arose" was immaterial because administrative rent would be payable only for the period during which the space was being used. The law was, quite simply, that the estate was liable only for the payment of rent for the period of time after the filing of the petition that it actually occupied the premises, and then only to the extent of the value of that occupancy.

Congress added § 365(d)(3) in 1984 to address the problems that landlords faced. The only legislative history describing the congressional purpose of the amendment is the statement of Senator Orrin Hatch, which includes the following:[5]

[One] problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease.

In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

Courts uniformly agree that the purpose of § 365(d)(3) is to require timely payment of rent at the contract rate until rejection occurs, at which time the landlord is entitled to possession under § 365(d)(4).[6] The statute thus changed prior law under which a landlord had to prove the value of the estate's possession in order to have an administrative expense claim under § 503(b)(1).

But courts have disagreed as to how § 365(d)(3) answers the two questions presented here.

With regard to the effective date of rejection, courts generally agree that rejection requires bankruptcy court approval under § 365(a).[7] Some courts, therefore,

---

4. Cases discussing this background of the 1984 amendment to § 365(d)(3) include *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir.1998), *In re Stone Barn Manhattan, LLC*, 398 B.R. 359, 361–362 (Bankr.S.D.N.Y.2008), and *Gwinnett Prado, L.P. v. Rhodes, Inc. (In re Rhodes, Inc.)*, 321 B.R. 80, 84 (Bankr.N.D.Ga.2005).

5. 130 Cong. Rec. S8891 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.C.C.A.N. 576, 599.

6. *See, e.g., In re Stone Barn Manhattan, LLC*, 398 B.R. 359, 362–363 (Bankr.S.D.N.Y.2008) (Discussing case law).

7. *See, e.g., Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d

conclude that rejection cannot be effective until the court approves it.[8] Other courts, however, conclude that a bankruptcy court has the equitable power in an appropriate case to order that rejection operate retroactively, consistent with the purpose of § 365(d)(3).[9]

Courts have generally taken two approaches to the question of the amount of rent and other charges that § 365(d)(3) requires the estate to pay during administration of the case prior to rejection.[10]

Some courts have concluded that the plain meaning of § 365(d)(3) is that an obligation for rent or other charges "arises" when it becomes due under the lease.[11] These courts interpret the word "arising" in the sense of "occurring" or "becoming due." Because the statute requires performance of obligations arising

1064 (9th Cir.2004); *Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.)*, 67 F.3d 1021 (1st Cir.1995); *In re Florida Lifestyle Apparel, Inc.*, 221 B.R. 897, 900 (Bankr.M.D.Fla.1997); *WB Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.)*, 142 B.R. 528, 532 (Bankr. N.D.Ga.1991); *In re D'Lites of America, Inc.*, 86 B.R. 299 (Bankr.N.D.Ga.1988).

**8.** *E.g., In re Florida Lifestyle Apparel, Inc.*, 221 B.R. 897, 900 (Bankr.M.D.Fla.1997).

**9.** *E.g., Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1070–71 (9th Cir.2004) ("[A] bankruptcy court, in exercising its equitable powers under 11 U.S.C. § 105(a), may approve the retroactive rejection of a nonresidential lease when 'necessary or appropriate to carry out the provisions of' § 365(d)."); *Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028 (1st Cir.1995) ("[A] bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date."); *Stonebriar Mall Ltd. Partnership v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 138 (D.Colo.2003); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr.N.D.Tex.1996); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33 (S.D.N.Y.1995).

**10.** Judge Massey adopted a third approach in *In re Rhodes, Inc.*, 321 B.R. 80 (Bankr. N.D.Ga.2005). After concluding that § 365(d)(3) is ambiguous, Judge Massey ruled that Congress intended that an obligation under an unexpired lease "arises at the time that the tenant's liability on that obligation becomes fixed in an amount unalterable by subsequent events, such as the termination of the

lease." *Id.* at 89. In this regard, the terms of the lease agreement between the parties control. Judge Massey explained, *id.* at 90:

> The ... question ... can be resolved by determining whether the tenant would have been obligated to pay an entire month's rent if the lease had been terminated on the second day of the month. If not, the obligation to pay rent presumably accrues until termination or expiration and is not fixed on a due date, though there could be consequences for not paying on a "timely" basis. Another way of approaching the problem is to ask whether a tenant would be entitled to a refund of a full month's rent paid on the first, if the tenant's obligations were otherwise current and the lease were terminated on the second because the premises were destroyed due to no fault of the tenant. If the tenant would have a right to a refund, the obligation to pay rent would arise each day that the lease is in effect. These examples may not be the only way to decipher the intent of the parties.

Judge Massey's thoughtful analysis has much to commend it, but the Court disagrees with the conclusion that Congress intended that the intent of the parties, as expressed in the lease, control the operation of a fundamental principle of bankruptcy law, which is the proper method for allowance of an administrative expense.

**11.** *E.g., CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Mongtomery Ward Holding Corp.)*, 268 F.3d 205, 209–10 (3d Cir.2001); *see HA–LO Indus., Inc. v. CenterPoint Properties Trust*, 342 F.3d 794 (7th Cir. 2003); *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 989 (6th Cir.2000); *Urban Retail Properties v. Loews Cineplex Entertainment Corp.*, 2002 WL 535479 (S.D.N.Y.2002).

after the order for relief and prior to rejection, the estate must perform the debtor's obligations to pay rent and other charges when they are due during the prerejection period. This interpretation is sometimes referred to as the "performance" or "billing date" approach.

This approach has two consequences. When, as in this case, rejection occurs after the date on which monthly rent is due but before the end of the month for which it is payable, the estate must pay the entire month's rent, regardless of the fact that, due to rejection, the landlord has possession of the property for a portion of the period for which rent is paid. On the other hand, if the bankruptcy filing occurs after the due date, § 365(d)(3) will not require payment of rent for the month in which the filing occurs. For example, if rent is due on the first of the month and the debtor files on the second, § 365(d)(3) under this interpretation does not require payment of any rent for that period. (That situation did not occur in this case because the Debtor had paid rent for the month in which it filed prior to the filing.) In the latter situation, the landlord's claim for rent for that period depends on allowance of the claim as an administrative expense under the usual requirements of § 503(b)(1) discussed earlier.

Other courts have found that the text of § 365(d)(3) is ambiguous because the word "arising" may also be used in the sense of "accruing."[12] Interpreting the statute with reference to and in the context of the existing law that it amended, these courts conclude that it does not displace the general principle of bankruptcy law pertaining to administrative expense claims that the estate should not bear an expense for which it receives no benefit. Under this "pro rata" or "accrual" approach, the postpetition rent the estate must pay is pro rated for the months in which the order for relief is entered and in which rejection occurs.[13]

The result of the pro rata approach is that § 365(d)(3) requires payment of rent as it accrues prior to rejection. The estate thus pays for the right of possession prior to rejection for the period that the landlord is denied possession, no more and no less; the timing of the filing of either the petition or the rejection motion makes no difference because § 365(d)(3) requires the estate to pay only for the time it has possession.

## II. Congressional Purpose In Enacting § 365(d)(3)

A fundamental question common to determination of both issues here is whether

---

12. *E.g., In re Stone Barn Manhattan, LLC*, 398 B.R. 359 (Bankr.S.D.N.Y.2008); *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 66–68 (Bankr. S.D.N.Y.2004); *In re NETtel Corp., Inc.*, 289 B.R. 486 (Bankr.D.C.2002); *El Paso Properties Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 66 n. 8 (10th Cir. BAP 2002); *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 939–40 (S.D.N.Y.1997); *see In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1127 (7th Cir.1998); *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 213 (3d Cir.2001) (Judge Mansmann, dissenting). The Seventh Circuit declined to apply the pro rata approach it applied with regard to taxes in the *Handy Andy* case to monthly rental obligations in *HA–LO Indus., Inc. v. CenterPoint Properties Trust*, 342 F.3d 794 (7th Cir.2003).

13. *E.g., Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064,1070–71(9th Cir.2004); *Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028 (1st Cir.1995); *Stonebriar Mall Ltd. Partnership v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 138 (D.Colo.2003); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr.N.D.Tex.1996); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33 (S.D.N.Y.1995).

Congress intended, in enacting § 365(d)(3), to displace the established principle that an estate's postpetition liabilities are limited to those that arise during the administration of the case and from which the estate derives a benefit necessary to administration of the case. The Court concludes that the better view is that it did not.

 Congress enacted § 365(d)(3) to require payment of postpetition rent and other obligations at the contract rate on a timely basis without regard to the "actual, necessary" requirement of § 503(b)(1) and to relieve landlords from the burden of proving an administrative expense claim. The statute's language requiring timely performance of the debtor's obligations "arising" after the order for relief "until" the lease is rejected makes it clear that the estate must pay for its right to possession until rejection terminates that right— whether or not the right to possession is actually exercised, regardless of the value of that right to the estate, and on a timely basis. Nothing indicates, however, that Congress intended to expand a landlord's rights to include compensation with regard to a period after which the landlord was entitled to possession, a result totally at odds with the established bankruptcy principle that a bankruptcy estate pay only for what it uses.

The Court concurs fully with the reasoning of cases such as *In re Stone Barn Manhattan, LLC*, 398 B.R. 359 (Bankr. S.D.N.Y.2008), and *In re NETtel Corp., Inc.*, 289 B.R. 486, 491–493 (Bankr.D.C. 2002). As stated in *In re NETtel Corp., Inc.*, 289 B.R. at 492 (citations omitted):

> The enactment of § 365(d)(3) addressed two problems: first, the landlord was given the right to rent payments contemporaneous with its provision of services to the debtor during the post-order-for-relief, prerejection period (and

to seek relief if those payments were not made), and, second, the landlord's claim for occupancy was to be fixed by the rental terms of the lease, not by the "actual, necessary" provision of § 503(b)(1) that governs allowance of administrative claims in general and that might limit reimbursement to the reasonable value of the trustee's actual use of the property. However, § 365(d)(3) was not intended to pay landlords for services not actually provided to the estate. Although § 365(d)(3) eliminates the application of § 503(b)(1) to services actually provided during the period after the order for relief and prior to rejection, nothing in § 365(d)(3) itself plainly requires the elimination of the pre–1984 practice of prorating administrative expenses to include only those arising by virtue of the right of occupancy under the lease during the post-order-for-relief, prerejection period.

The Court thus concludes that Congress intended, in the case of a landlord, that the estate timely compensate the landlord at the contract rate for the denial of possession during administration of the bankruptcy case but did not intend to extend the estate's liability for rent beyond that period.

### III. Retroactive Approval of Rejection

 Given the foregoing understanding of the purposes of § 365(d)(3), it follows that a bankruptcy court has the equitable discretion to order that rejection operate retroactively when appropriate to effect its fundamental objectives. *See e.g., Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064,1070–71 (9th Cir.2004) ("[A] bankruptcy court, in exercising its equitable powers under 11 U.S.C. § 105(a), may approve the retroactive rejection of a nonresidential lease when 'necessary or appropriate to carry out' the provisions of"

§ 365(d)."); *Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.),* 67 F.3d 1021, 1028 (1st Cir.1995) ("[A] bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date."); *Stonebriar Mall Ltd. Partnership v. CCI Wireless, LLC (In re CCI Wireless, LLC),* 297 B.R. 133, 138 (D.Colo.2003); *In re Amber's Stores, Inc.,* 193 B.R. 819, 827 (Bankr. N.D.Tex.1996); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.),* 179 B.R. 33 (S.D.N.Y.1995).

■ The Court notes that permitting retroactive rejection promotes the orderly administration of bankruptcy cases. If retroactive approval of rejection is not permitted, bankruptcy courts face the prospect of requests for expedited determination of rejection motions as a matter of course in order to reduce administrative expenses. A possible answer to this is the adage, "Failure to plan on your part does not constitute an emergency on my part," but as a practical matter, exact planning in the course of liquidating assets or attempting to restructure a business in the bankruptcy context is often difficult. An estate cannot always predict with certainty when it will no longer require possession of leased premises; in any event, an estate cannot control a court's calendar to dictate when the court will consider a rejection motion. Effective and economical administration of bankruptcy cases, therefore, requires that the estate have some flexibility and leeway with regard to the timing of the rejection of unexpired leases. These considerations support the Court's exercise of equitable discretion to approve the rejection of a lease retroactively in order to reduce unnecessary burdens on a bankruptcy estate and the bankruptcy court when, as explained later in the text, the delay in approval of rejection does not prejudice the landlord's real interests.

## IV. Rent Payable on Pro Rata Basis

■ It also follows that an estate is liable under § 365(d)(3) for the pro rata portion of the rent that accrues prior to the effective date of rejection. *See, e.g., In re Stone Barn Manhattan LLC,* 398 B.R. 359 (Bankr.S.D.N.Y.2008); *In re Ames Dept. Stores, Inc.,* 306 B.R. 43, 66–68 (Bankr.S.D.N.Y.2004); *In re NETtel Corp., Inc.,* 289 B.R. 486 (Bankr.D.C.2002); *El Paso Properties Corp. v. Gonzales (In re Furr's Supermarkets, Inc.),* 283 B.R. 60, 66 n. 8 (10th Cir. BAP 2002); *Newman v. McCrory Corp. (In re McCrory Corp.),* 210 B.R. 934, 939–40 (S.D.N.Y.1997).[14] *See also In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1127 (7th Cir.1998);[15] *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 268 F.3d 205, 213 (3d Cir.2001) (Judge Mansmann, dissenting).

■ In this regard, this Court agrees with the courts that have concluded that § 365(d)(3) is ambiguous. "[W]hen Congress' words admit of more than one reasonable interpretation, 'plain meaning' becomes an impossible dream, and an inquiring court must look to the policies, principles and purposes underlying the statute in order to construe it.

---

**14.** The court in *Urban Retail Properties v. Loews Cineplex Entertainment Corp.,* 2002 WL 535479 (S.D.N.Y.2002), declined to apply the *McCrory* analysis to a capital expense obligation.

**15.** The Seventh Circuit declined to apply the pro rata approach it applied with regard to taxes in the *Handy Andy* case to monthly rental obligations in *HA–LO Indus., Inc. v. CenterPoint Properties Trust,* 342 F.3d 794 (7th Cir.2003).

Congress, after all, does not legislate in a vacuum." *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. #1 (In re Thinking Machines Corp.),* 67 F.3d 1021, 1025 (1st Cir.1995) (citations omitted).

Consistent with the Court's conclusion with regard to the purpose and meaning of § 365(d)(3) set forth above, the Court concludes that the "accrual" or "pro rata" approach to interpretation of the statute best reflects congressional intent. Simply put, the Court is convinced that the purpose and intent of the statute is to require payment of postpetition rent and other charges at the contract rate for the period from the filing of the case through the date of rejection, *i.e.,* the time during which the landlord is denied access to the premises. But in doing so, Congress did not intend to require that the estate pay rent once the landlord is entitled to possession and the estate is no longer receiving any possible benefit. Congress changed the rules to require payment of postpetition rent and other charges at the contract rate and to eliminate the possibility of deferral of payment of postpetition rent to put landlords on a parity with other postpetition creditors, not to put them in a favored position under which the estate would have to pay for something without any corresponding benefit. (The Court notes that this interpretation also means that a debtor who files a petition after the due date must pay the pro rata portion of the first month's rent, which is also what Congress intended.)

### V. Determination of Effective Date of Rejection

In summary, § 365(d)(3) requires the Debtor to pay rent to Duke at the contract rate on an accrual basis through the date of rejection, which may be effective retroactively under appropriate circumstances. The Court thus turns to the question of the appropriate effective date for rejection in this case.

■ Two considerations properly inform the Court's exercise of its discretion with regard to the effective date of rejection. Of primary importance is the protection that § 365(d)(3) provides for the interest of the landlord in receiving postpetition rent at the contract rate until it effectively has possession and control of the premises so that it can begin the reletting process.[16] Once the landlord's possessory interest is protected, the Court properly gives consideration to the principle that limits allowance of administrative expenses to those necessarily incurred in the bankruptcy process—in aid of liquidation in a liquidation case or in connection with the opportunity to restructure in a reorganization case. Every dollar that the estate must pay to an administrative expense claimant is a dollar that is not available for payment to other creditors. Together, the two principles require that the period for which the landlord receives compensation end when the landlord is effectively entitled to possession of the premises.

■ In almost all cases, approval of rejection of an unexpired lease is a *pro forma* matter, especially when a trustee or debtor in possession is liquidating and is no longer occupying the premises. In such a circumstance, rejection occurs as a matter of course. Once the trustee or debtor in possession has communicated an unequivocal decision to reject the lease, the landlord knows that it is highly likely that rejection will occur and that reletting

---

16. *See, e.g., Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.),* 392 F.3d 1064, 1070–71 (9th Cir.2004) ("[C]ourts generally focus on whether the parties have facilitated or hindered the prompt return of the leased premises to the landlord when deciding whether to approve the rejection of a lease retroactive to an earlier date.").

will be necessary. If the premises have been vacated so that the landlord may take possession, the landlord is effectively in the same position as if rejection had already occurred. It can begin the process of inspecting the property, marketing it to prospective tenants, and negotiating a new lease. Unless a landlord shows that the absence of court approval of the rejection has prejudiced it in some way, the approval of rejection of a lease retroactive to the date that the landlord was effectively in a position to begin the reletting of the property is appropriate.

Prejudice to a landlord might occur if the trustee or debtor in possession has denied possession to the landlord or otherwise impaired its reletting efforts or if the landlord could not enter into a new lease with a ready, willing, and able tenant because rejection had not yet occurred. (Of course, in such situations the landlord could request an expedited determination of the rejection issue which the trustee or debtor in possession presumably would not oppose. Indeed, the trustee or debtor in possession itself could seek expedited approval if the landlord presented such a situation.)

Equitable considerations thus permit retroactive approval of an unexpired lease as of a date when the landlord is in substantially the same position that it would be if the bankruptcy court had approved rejection on that date. A landlord is ordinarily in such a position on the date when it has received unequivocal notice of the estate's intent to reject the lease and when it has the opportunity to obtain possession of the premises and to commence the reletting process.

█ In this case, the Debtor did not communicate its intent to reject until it filed the rejection motion. But the Debtor did not affirmatively communicate to Duke that it could have immediate possession of the premises and that the Debtor would cooperate with Duke in its reletting efforts. In the absence of affirmative action by a debtor in possession or trustee to advise the landlord that it has vacated the premises and that the landlord may freely enter prior to the court's approval of the proposed rejection, equitable considerations require that the landlord have a reasonable time, perhaps a week or so, following receipt of the rejection motion within which, if it chooses, it may evaluate its position and request permission to immediately enter the premises and otherwise begin the reletting process without delay. Of course, evidence that the landlord requested but did not receive possession and cooperation and that its ability to commence the reletting process was delayed would require a different result; in such a circumstance, such an effective date for rejection would be inequitable because the landlord did not have the substantial equivalent of rejection at that time.

Nothing in this case indicates that, after a reasonable time to evaluate its position, Duke suffered any prejudice as a result of the timing of the hearing on rejection. With allowances of three days for Duke's receipt of the rejection motion following its service (the time usually added when calculating time periods specified under procedural rules when service is made by mail [17]) and of a week for Duke to take action in response to it, equitable considerations support approval of rejection retroactive to a date ten days after service of the rejection motion. In the circumstances of this case, therefore, the Court will exercise its equitable discretion to approve the rejection retroactive to April 20,

17. FED.R.CIV.P. 6(e); FED. R. BANKR.P. 9006(f).

2008, which is ten days after the filing of the rejection motion.

### Conclusion

The Court concludes that it has the equitable discretion to order that rejection of the sublease be effective retroactively and that, in the exercise of that discretion, the appropriate effective date for rejection is April 20, 2008. The Court further concludes that the Debtor is obligated under § 365(d)(3) to pay rent through that period at the contract rate of $37,704.05 per month. Because April has 30 days, the daily amount is $1,256.80 ($37,704.05 ÷ 30 days = $1,256.80/day), and the amount due for April is $25,136.00 ($1,256.80/day × 20 days = $25,136.00). Duke is, therefore, allowed an administrative expense claim in the amount of $25,136.00, and the Debtor is ordered to pay same in accordance with § 365(d)(3).

A separate judgment will be entered.